1998 ND 94

**Laverne GREGORY, Claimant and Appellee,**

v.

**NORTH DAKOTA WORKERS COMPENSATION BUREAU, Appellant,**

and

**Midwest Motor Express, Inc., Respondent**

**Civil No. 970243.**

Supreme Court of North Dakota.

April 28, 1998.

Rehearing Denied May 20, 1998.

---

Mark G. Schneider (argued), of Schneider, Schneider & Schneider, Fargo, for claimant and appellee.

Brent J. Edison (argued), and Tracy L. Vigness Kolb (appearance), Special Assistant Attorneys General, Bismarck, for appellant.

MESCHKE, Justice.

[¶ 1] The Workers Compensation Bureau appealed a district court judgment reversing the Bureau's order canceling Laverne Gregory's disability benefits when he began receiving social security retirement benefits. We hold the district court had jurisdiction, Gregory's appeal was not moot, and the Bureau erred when it terminated a valid obligation to pay Gregory disability "as long as [he] remain[ed] totally disabled." We affirm the judgment.

## I. FACTS

[¶ 2] Gregory was seriously injured at work in 1958. The Bureau paid medical and disability benefits. Gregory returned to work until February 1981, when the cumulative effects of his 1958 injury prevented him from working. Then the Bureau began paying him disability benefits.[1] In 1985 the Bureau ordered payment of permanent total disability benefits to Gregory for "as long as you remain totally disabled."

[¶ 3] In July 1996, the Bureau notified Gregory of its intention to discontinue disability benefits under a 1995 enactment of N.D.C.C. § 65–05–09.3 creating a rebuttable presumption that a disability recipient who begins receiving social security retirement benefits is considered retired and ineligible for disability benefits. On August 2, 1996, the Bureau ordered cancellation of Gregory's

disability benefits effective August 13, 1996, when he turned 65.

[¶ 4] As directed by N.D.C.C. § 65–02–27, Gregory requested assistance from the Bureau's Workers' Adviser Program on August 29, 1996. The Bureau responded his request could not be processed due to turnover in the staff of the Program. The Bureau therefore issued him a certificate of completion of the Program on September 23, 1996.

[¶ 5] On October 7, 1996, Gregory appealed to the district court. On April 8, 1997, the court ruled the Bureau had erred in terminating Gregory's disability benefits, and ordered the Bureau to reinstate them. The Bureau moved to vacate the court's decision, arguing that Gregory's appeal had become moot because, on March 26, 1997, the Bureau vacated its August 2, 1996 order and awarded additional benefits under 1997 legislative amendments. The district court denied the motion and entered judgment on May 27, 1997. The Bureau appealed to this court.

## II. JURISDICTION

[¶ 6] The Bureau argues its August 2, 1996 order was an informal order under N.D.C.C. § 65–01–14(4), and thus was not appealable under *McArthur v. North Dakota Workers Compensation Bureau*, 1997 ND 105, 564 N.W.2d 655. The Bureau argues the district court thus had no jurisdiction to hear Gregory's appeal and the judgment reversing the Bureau's order is void.

[¶ 7] An appeal from an administrative agency to the district court invokes appellate jurisdiction that is conferred by statute. *Lende v. North Dakota Workers' Compensation Bureau*, 1997 ND 178, ¶ 10, 568 N.W.2d 755; *McArthur*, 1997 ND 105, ¶ 9, 564 N.W.2d 655. As we explained in *Lende* at ¶ 10, and in *McArthur* at ¶ 9, the right to appeal is jurisdictional.

---

1. Gregory requested permanent partial impairment compensation in 1983. The Bureau ruled Gregory had a twenty percent whole body impairment and paid the rate in effect in 1958, when Gregory was first injured. Gregory sought compensation at the rate in effect in 1983, when his impairment was actually determined. We decided the dispute for Gregory, ordering his permanent partial impairment benefits paid at the 1983 rate. *Gregory v. North Dakota Workmen's Compensation Bureau*, 369 N.W.2d 119 (N.D.1985).

[¶ 8] At the time of this appeal, the pertinent parts of N.D.C.C. § 65–01–14(4) directed: [2]

The bureau shall make its informal decision on the claim after filing of the claim and the physician's certificate.... Any party may, within thirty days of the date of mailing of notice of initial award, request reconsideration by filing a written request for reconsideration.... If a timely request for reconsideration is not filed, the decision of the bureau is final, subject only to reopening of the claim under section 65–05–04. The provisions of section 65–10–01, relating to appeals from decision of the bureau, apply only when the bureau issues an order following a timely request for reconsideration.

[¶ 9] In *McArthur*, 1997 ND 105, ¶ 10, 564 N.W.2d 655, we held an informal order, made from the claim form and medical records and without a formal evidentiary hearing, was not appealable:

N.D.C.C. § 65–10–01, which authorizes an appeal of the Bureau's final action denying a claimant's right to participate in the fund, does not apply to an informal decision, but applies only to "an order following a timely request for reconsideration." N.D.C.C. § 65–01–14(4). The specific provision in N.D.C.C. § 65–01–14(4) making a request for reconsideration necessary before an appeal may be taken in workers compensation cases prevails over the general provision in N.D.C.C. § 28–32–14, which states filing a petition for reconsideration is not a prerequisite for seeking judicial review of a final order of an administrative agency. The general statute on appeals from administrative agency decisions, N.D.C.C. § 28–32–15, does not authorize McArthur's appeal from the Bureau's informal decision. N.D.C.C. § 28–32–15(1) authorizes a party to appeal an administrative agency order, "except in cases where the order of the administrative agency is declared final by any other statute." That exception is met by N.D.C.C. § 65–01–14(4), which provides, absent a request for reconsideration, an

informal decision of the Bureau "is final, subject only to reopening of the claim under section 65–05–04." Because McArthur did not file a request for reconsideration, the informal decision became final, subject only to reopening under N.D.C.C. § 65–05–04. We conclude the Bureau's informal decision was not appealable.

*See also Freezon v. North Dakota Workers Compensation Bureau*, 1998 ND 23, ¶¶ 9–10, 574 N.W.2d 577; *McCarty v. North Dakota Workers Compensation Bureau*, 1998 ND 9, ¶ 9, 574 N.W.2d 556. Still, because McArthur's effort to appeal documented a need for further consideration, we directed the Bureau to treat it as a request for reconsideration and remanded for a hearing.

[¶ 10] We considered a related problem in *Lende*, 1997 ND 178, 568 N.W.2d 755. In *Lende*, the Bureau issued an order denying permanent partial impairment benefits. Lende petitioned for reconsideration and a formal hearing. When the Bureau failed to schedule a hearing after months of delay, Lende appealed to the district court. The Bureau argued his petition for reconsideration was still pending, and thus no final order existed for an appeal.

[¶ 11] We concluded the order was final because, under the relevant statutes, Lende's petition for reconsideration was deemed to have been denied when the Bureau failed to act upon it in a timely manner. *Lende*, 1997 ND 178, ¶¶ 16–22, 568 N.W.2d 755. We applied N.D.C.C. §§ 28–32–14(4) and 28–32–15(1) that direct, when an agency fails to act on a petition for reconsideration within thirty days of its filing, the petition is deemed to have been denied by a final determination and authorize an appeal to be taken.

[¶ 12] Interpreting those statutes, we held, in *Lende* at ¶¶ 20, 22 (emphasis in original), the Bureau's decision became a final, appealable order thirty days after the petition for reconsideration and a hearing had been filed:

The Administrative Agencies Practice Act provides that within thirty days after the filing of the petition the agency must "dispose of" the petition or it will be deemed to

---

2. N.D.C.C. § 65–01–14 was repealed in 1997, but similar provisions are now codified in N.D.C.C. § 65–01–16. *See* 1997 N.D. Sess. Laws Ch. 532, §§ 1 and 6.

have been denied and a "final determination" will be deemed to have been made. N.D.C.C. § 28–32–14(3) clearly provides a claimant may petition for a reconsideration based on documentary evidence or based on a further formal evidentiary hearing.... The question is what action, if any, is the Bureau required to take in the thirty days following the filing of the petition.... If the petition for reconsideration requests a formal hearing, the statutory requirement that the Bureau "dispose of" the petition means in its ordinary sense, at a minimum, the Bureau must take some affirmative action toward the arrangement of the formal hearing within thirty days of the filing of the petition....
[I]t is undisputed the Bureau took *no* action within thirty days of the filing of the petition for reconsideration with regard to the claimant's request for a formal hearing. The Bureau has failed to point out any evidence in the record of any action taken within the thirty day deadline. There was not even an acknowledgment of Lende's request for a formal hearing until the October 30, 1995, letter from the Bureau's outside counsel to Lende's counsel stating he will "take the necessary steps to have the matter set for hearing." The next action the Bureau took was to serve a notice to take deposition dated January 11, 1996, the very day Lende served her notice of appeal to the district court. We conclude the Bureau's order of May 2, 1995, became a final, appealable order thirty days after the petition was filed under N.D.C.C. §§ 28–32–14(4) and 28–32–15(1).

The distinction between *McArthur* and *Lende* can be seen in what the claimant did after the original order.

[¶ 13] If a claimant fails to petition for reconsideration or request a hearing, but instead immediately appeals an informal order, *McArthur* holds the order is not then reviewable. If, however, the claimant petitions for reconsideration or requests a hearing, and the Bureau fails to act on that request within thirty days, *Lende* holds the request is

deemed denied, the order becomes final, and the claimant can appeal.

[¶ 14] An additional procedure affects this case. Under the statutes in place when Gregory appealed to the district court in 1996, a dissatisfied worker could seek the assistance of the Workers' Adviser Program. *See* N.D.C.C. § 65–02–27.[3] Indeed, seeking assistance from the Program was a prerequisite for the worker to obtain attorney fees for any subsequent litigation with the Bureau. *Id.*

[¶ 15] Gregory timely requested assistance from the Program after the Bureau's August 2, 1996 order canceled his benefits. Gregory's request for assistance was an effective request for a hearing:

> An injured employee who contacts the program for assistance within the appeal period after an administrative order has been issued is deemed to have satisfied the requirement of requesting an administrative hearing or an arbitration hearing on that order.

N.D.C.C. § 65–02–27 (1995). Thus, when Gregory asked for assistance, he also effectively requested a formal administrative hearing on the August 2, 1996 order. A request for a hearing is a petition for reconsideration under N.D.C.C. § 65–01–14(4). *See Freezon,* 1998 ND 23, ¶ 6, 574 N.W.2d 577; *Lende,* 1997 ND 178, ¶ 20, 568 N.W.2d 755; *cf. McArthur,* 1997 ND 105, ¶ 12, 564 N.W.2d 655 (because filing of appeal demonstrated employee was dissatisfied with informal order and desired further consideration, notice of appeal treated as a petition for reconsideration). Thus, this case is controlled by *Lende,* not *McArthur.*

[¶ 16] The Bureau failed to act in any way upon Gregory's deemed request for a hearing. The Bureau informed Gregory that staffing problems precluded assistance through the Workers' Adviser Program, and the Bureau issued him a certificate of completion of the Program. The Bureau failed, however, to schedule a hearing or take any other "affirmative action toward the arrangement of the formal hearing within thirty

---

3. The Workers' Adviser Program has since been amended by the 1997 Legislature. *See* 1997 N.D. Sess. Laws Ch. 532, § 4.

days." *Lende,* 1997 ND 178, ¶ 20, 568 N.W.2d 755. Accordingly, the Bureau effectively denied the petition, and its decision became a final, appealable order under *Lende.* We therefore conclude this appeal was proper, and the district court had jurisdiction.[4]

## III. MOOTNESS

■ [¶ 17] The Bureau argues Gregory's appeal to the district court became moot and the judgment must therefore be vacated. More background will place this argument in context.

[¶ 18] When Gregory began receiving permanent total disability benefits in 1985, the Workers' Compensation Act made those benefits payable for life if the claimant remained disabled.[5] *See Kallhoff v. North Dakota Workers' Compensation Bureau,* 484 N.W.2d 510, 514 (N.D.1992). The Bureau's original order for permanent disability benefits to Gregory, dated February 21, 1985, declared those disability benefits would be paid "as long as you remain totally disabled." In 1989 the legislature enacted N.D.C.C. § 65–05–09.2 to require an offset of social security retirement benefits against workers' compensation disability benefits for workers who retired on or after July 1, 1989. In *Kallhoff,* 484 N.W.2d at 514, we held N.D.C.C. § 65–05–09.2 did not apply to a claimant who was receiving workers compensation disability

benefits before 1989, but whose social security disability benefits became retirement benefits in 1990 when he turned 65.[6]

[¶ 19] In 1995, the legislature enacted the statutory presumption a disabled person who became eligible for social security retirement benefits was considered to be retired and no longer eligible for workers compensation disability benefits:

> An injured employee who is receiving permanent total, temporary total, or temporary partial disability benefits, or rehabilitation benefits, and who begins receiving social security retirement benefits or other retirement benefits in lieu of social security retirement benefits, or who is at least sixty-five years old and is eligible to receive social security retirement benefits or other retirement benefits in lieu of social security retirement benefits, is considered to be retired. The bureau may not pay any permanent total, temporary total, or temporary partial disability benefits, rehabilitation benefits, or supplemental benefits to an employee who is considered retired. . . .

N.D.C.C. § 65–05–09.3(2). This enactment applied to all persons who would retire or become eligible for social security retirement benefits after July 31, 1995, *see* N.D.C.C. § 65–05–09.3(4), and it was used by the Bureau for its August 2, 1996 order canceling Gregory's disability benefits.

---

**4.** As our recent decisions on appealability of Bureau orders attest, the statutes governing informal decisionmaking, finality, and requests for reconsideration have become a virtually incomprehensible quagmire. We suggest the legislature clean up this labyrinthian procedural morass that ensnares unsuspecting workers and their lawyers.

**5.** 5 Larson, *Workers' Compensation Law* § 60.21(f) (1997) states the general rule:

> If permanent disability or death benefits become payable, they are not limited to the period of what would have been claimant's active working life. In other words, if a man becomes totally permanently disabled at age twenty-five, and is awarded benefits for life, they obviously do not stop when he is sixty-five, but extend on into the period of what probably would have been retirement. This being so, if a man is permanently and totally disabled at age sixty, it is not correct to say that his benefits should be based on the theory

that his probable future loss of earnings was only five years of earnings. The right to have compensation benefits continue into retirement years is built into the very idea of workmen's compensation as a self-sufficient social insurance mechanism.

**6.** In addition to the retirement offset, the Workers Compensation Act also requires an offset if the employee is eligible for social security disability benefits under 42 U.S.C. 423. *See* N.D.C.C. § 65–05–09.1. This statute requires a reduction of the worker's disability benefits equal to one-half of the federal disability benefit. Effective January 1, 1990, Gregory's workers compensation disability benefits were reduced by $3,600 per year under this provision, thereby coordinating the federal and state disability benefits. When Gregory turned 65, his social security disability benefits converted to retirement benefits. This was a label change only; he still received the same monthly amount in federal benefits.

[¶ 20] In 1997, however, the legislature replaced N.D.C.C. § 65–05–09.3(2) and created a new "additional benefit," codified in N.D.C.C. § 65–05–09.4, for a worker whose disability benefits were canceled by a presumed "retirement." 1997 N.D. Sess. Laws Ch. 543. N.D.C.C. § 65–05–09.3(2) now reads:

> An injured employee who begins receiving social security retirement benefits or other retirement benefits in lieu of social security retirement benefits, or who attains retirement age for social security retirement benefits unless the employee proves the employee is not eligible to receive social security retirement benefits or other benefits in lieu of social security retirement benefits is considered retired. The bureau may not pay any disability benefits, rehabilitation benefits, or supplementary benefits to an employee who is considered retired; however, the employee remains eligible for medical benefits, permanent partial impairment benefits, and the additional benefit payable under section 65–05–09.4.

This "additional benefit" under N.D.C.C. § 65–05–09.4 is computed as a percentage of the former disability benefit based upon the length of time the worker had received disability payments. The 1997 amendments were made an emergency measure that became effective March 13, 1997. 1997 N.D. Sess. Laws. Ch. 543, § 4. The legislature also directed these new provisions be retroactive to August 1, 1995. *Id.* at § 3.

[¶ 21] Two weeks after the effective date of N.D.C.C. § 65–05–09.4, on March 26, 1997, while this appeal to the district court was pending, and without notice or hearing, the Bureau issued an order to revoke its previous order terminating Gregory's disability benefits, and to award Gregory the newly enacted "additional benefit." [7] The new order included a lump sum computed from August 13, 1996.[8] On April 8, 1997, the district court, apparently unaware of the Bu-

reau's March 26, 1997 order, issued its memorandum decision reversing the Bureau's August 2, 1996 order. The Bureau moved to vacate the district court decision, arguing the appeal had been mooted by its unilateral March 26, 1997 order. The district court denied the motion. On appeal, the Bureau now renews its argument this case is moot and urges us to vacate the district court decision.

 [¶ 22] There must be an actual and justiciable controversy for a court to exercise its appellate jurisdiction. *Sposato v. Sposato,* 1997 ND 207, ¶ 8, 570 N.W.2d 212. An appeal is moot when an appellate court is unable to give effective relief because of a lapse of time or the occurrence of related events. *Id.* at ¶ 8; *Kahl v. Director, North Dakota Dep't of Transp.,* 1997 ND 147, ¶ 6, 567 N.W.2d 197; *Bland v. Commission on Med. Competency,* 557 N.W.2d 379, 381 (N.D. 1996). We conclude the related events have not mooted this case.

[¶ 23] The Bureau argues the district court was unable to give effective relief because the Bureau is now "without authority to apply the 1995 statute" retroactively amended by the legislature. Gregory does not, however, seek application of the 1995 statute. Rather, Gregory asserts the 1995 statute canceling his workers' disability compensation when he became sixty-five was either unconstitutional or did not apply to him. The district court decision did not require the Bureau to "apply" the 1995 statute, but instead held that the 1995 statute did not apply to cancel a valid obligation to pay Gregory disability benefits while he remained disabled.

[¶ 24] The Bureau also argues its March 26, 1997 order applying the 1997 amendments "renders moot all issues in dispute under the Bureau's prior order." The Bureau argues the district court could give no effective relief because the 1997 amendments were made retroactive to August 1, 1995, and Gregory's right to benefits after that time is

---

7. Gregory had been receiving disability benefits of $627.32 every 28 days before August 13, 1996. From the Bureau's March 26, 1997 order, Gregory instead would receive $262.12 every 28 days for a maximum of 15.4 years.

8. Gregory requested a hearing on the Bureau's March 26, 1997 order. By agreement of counsel, that hearing was held in abeyance pending the outcome of this appeal.

now governed by the new statute. We disagree.

[¶ 25] Gregory asserts the 1995 presumptive cancellation of disability benefits was unconstitutional or did not apply to him. If Gregory is right, he was entitled to full disability benefits continued past his 65th birthday. Then, any action by the 1997 legislature attempting to end or to reduce Gregory's workers' compensation retroactively to August 1996 would be ineffective. Statutory amendments may not operate retrospectively to abrogate a vested right or a valid obligation. *E.g., Jensen v. North Dakota Workers Compensation Bureau*, 1997 ND 107, ¶¶ 11–12, 563 N.W.2d 112; *Thompson v. North Dakota Workers' Compensation Bureau*, 490 N.W.2d 248, 251 (N.D.1992). If the 1995 cancellation was unconstitutional or did not apply to end Gregory's benefits, then Gregory had a continued right to receive those benefits.[9] Accordingly, an actual and justiciable controversy continues to exist in this case, the courts are able to order effective relief, and this case is not moot.

## IV. VALID OBLIGATION

[¶ 26] On appeal we review the decision of the Bureau, not the district court's decision, and we limit our review to the record before the Bureau. *Loberg v. North Dakota Workers Compensation Bureau*, 1998 ND 64, ¶ 5, 575 N.W.2d 221; *Flink v. North Dakota Workers Compensation Bureau*, 1998 ND 11, ¶ 8, 574 N.W.2d 784. Both sides agree this appeal presents only questions of law. Therefore, we affirm the Bureau's decision unless its decision is not supported by its conclusions of law, its decision is not in accordance with the law, or its decision violates the worker's constitutional rights. *Loberg*, 1998 ND 64, ¶ 5, 575 N.W.2d 221. As we explained in *Flink*, 1998 ND 11, ¶ 9, 574 N.W.2d 784, questions of law, including interpretation of a statute, are fully reviewable on appeal.

[¶ 27] Gregory raised numerous constitutional challenges to N.D.C.C. § 65–05–09.3(2), asserting the statute violated equal protection and impaired vested, valid, and contractual rights. Courts in other jurisdictions that have addressed similar statutes that end or reduce workers compensation disability benefits at a presumptive retirement age are divided over their constitutionality. Some courts have held such statutes violated equal protection, *see Industrial Claim Appeals Office v. Romero*, 912 P.2d 62 (Colo.1996) [10] and *State ex rel. Boan v. Richardson*, 198 W.Va. 545, 482 S.E.2d 162 (1996),[11] while other courts have upheld their

---

9. The validity of the 1997 amendments is not before us on this appeal.

10. [S]ocial security retirement benefits do not serve the same purpose as workers' compensation benefits. Social security retirement benefits are provided to persons over age sixty-five regardless of injury, as long as the recipient has reached the statutory age after having been employed and having contributed to the Social Security Trust Fund.... These benefits are not disability benefits, but are old-age entitlements serving the same function as pension payments.... Workers' compensation benefits are paid from insurance provided by employers in exchange for the employee's forbearance from suing the employer in tort.... Thus, withholding workers' compensation benefits from persons age sixty-five and older because they presumably receive retirement benefits is not rationally related to the goal of preventing duplicate benefits because workers' compensation benefits do not serve the same purpose as retirement benefits.
*Romero*, 912 P.2d at 67–68 (case citations and footnotes omitted).

11. Social security old age insurance benefits ... are retirement benefits earned by continued employment in the work force and the attainment of the age of sixty-two or sixty-five or older. *See* 42 U.S.C. §§ 402(a) and 416(*l*) (1994). Those benefits arise primarily from participation in the national workforce. Employers and employees contribute to the system, and the benefits are, in effect, additional compensation paid by insurance as a result of having worked some period of time at some average taxable salary, except as the payments reflect a return of the recipient's wage contributions to the system. *See* 42 U.S.C. § 415 (1994). Those benefits are not designed or intended to compensate for a workplace injury or replace elements of damage that might be recovered in a common law action for [ ] such an injury. While old age social security may well provide some level of income while one who has been injured at work is not working, it is paid as a result of work history and the attainment of the age-required age, not by reason of any injury. Old age social security also functions as a partial replacement of income foregone by reason of the fact that one has retired and is not working or is not working at

constitutionality. *See Golden v. Westark Community College*, 58 Ark.App. 209, 948 S.W.2d 108 (1997); *Sasso v. Ram Property Management*, 431 So.2d 204 (Fla.Dist.Ct. App.1983), *aff'd*, 452 So.2d 932 (Fla.1984); *Tobin's Case*, 424 Mass. 250, 675 N.E.2d 781 (1997); *Vogel v. Wells Fargo Guard Services*, 937 S.W.2d 856 (Tenn.1996). For a discussion of the constitutional problems raised by the North Dakota statute, *see* Susan J. Anderson & Gerald (Jud) DeLoss, *Are Employees Obtaining "Sure and Certain Relief" Under the 1995 Legislative Enactments of the North Dakota Workers' Compensation Act?*, 72 N.D.L.Rev. 349, 361–366 (1996). "[N.D.C.C. § 65–05–09.3] would likely be found unconstitutional, therefore, because it deprives elderly workers of an adequate statutory remedy to replace their common law rights which were originally abolished by the Workers Compensation Act." *Id.* at 366. As these sources indicate, the Bureau's application of N.D.C.C. § 65–05–09.3(2) to cancel Gregory's disability benefits upon his 65th birthday produces profound constitutional conflicts.

[¶ 28] We interpret statutes to avoid constitutional conflicts if possible. *E.g., Kasprowicz v. Finck*, 1998 ND 4, ¶ 11, 574 N.W.2d 564; *McCabe v. North Dakota Workers Compensation Bureau*, 1997 ND 145, ¶ 10, 567 N.W.2d 201. If a statute is open to divergent constructions, one that would make it of doubtful constitutionality and one that would not, this court must adopt the construction that avoids a constitutional conflict. *McCabe*, 1997 ND 145, ¶¶ 10, 16, 567 N.W.2d 201; *Hovland v. City of Grand Forks*, 1997 ND 95, ¶ 12, 563 N.W.2d 384; *Peterson v. Peterson*, 1997 ND 14, ¶ 26, 559 N.W.2d 826. In this case, we interpret the 1995 enactment of N.D.C.C. § 65–05–09.3(2) to avoid any constitutional conflict.

[¶ 29] In construing N.D.C.C. § 65–05–09.3(2), the district court applied the rule of statutory construction in N.D.C.C. § 1–02–30:

> No provision contained in this code may be so construed as to impair any vested right or valid obligation existing when it takes effect.

The Bureau has focused its argument upon attempting to show Gregory did not have a vested right to continue receiving disability benefits past his 65th birthday. The district court did not rest its ruling on whether Gregory had a vested right, but concluded the Bureau had a "valid obligation" to pay disability benefits as long as Gregory remained totally disabled.

[¶ 30] In determining whether a valid obligation existed when the 1995 amendment to N.D.C.C. § 65–05–09.3(2) took effect, we look to our prior precedents where we have concluded a worker currently receiving benefits had a significant property right in continuation of those benefits, and an expectation those benefits would continue. We have held the right to receive continuing workers compensation disability benefits by a worker already receiving them is a property right subject to due process protection, and that the claimant has "a right to rely upon continuing, regular, ongoing payments." *Nemec v. North Dakota Workers Compensation Bureau*, 543 N.W.2d 233, 237–238 (N.D.1996); *see also Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770, 772–773 (N.D.1988). In *Kallhoff v. North Dakota Workers' Compensation Bureau*, 484 N.W.2d at 512–514, we repeatedly stressed the reliance interest of a worker to continued disability benefits when we held that the 1989 retirement offset directive did not apply to one who was receiving disability benefits be-

---

the pace engaged in prior to retirement. Indeed, one of the probable effects of being on permanent total disability under workers' compensation prior to attaining retirement age is to reduce the product of the statutory factors of time and wages that determine the amount of old age benefits. 42 U.S.C. § 415 (1994)....

[A] person on social security old age benefits may also be employed and earn additional money, limited in amount until age seventy, without any offset against those old age bene-

fits. *See, e.g.,* 42 U.S.C. § 403(b), (f), and (h) (1994).

*Boan*, 482 S.E.2d at 166 (footnote omitted). Also, after age 70, a person on social security may be employed and earn unlimited additional money without reducing social security benefits. *See* 20 C.F.R. § 404.415. A person totally disabled from a work injury thus has no opportunity to supplement his retirement income by any employment, either part or full-time, as the social security act contemplates.

fore 1989 but who turned 65 after the effective date of the statute. We reasoned:

> The Bureau wants us to interpret the statute to interfere with Kallhoff's expectation that his benefits would continue as he had anticipated. Kallhoff makes no claim that his benefits are vested, only that he and others similarly situated have relied on receiving unreduced retirement benefits. We agree that offsetting his post-July, 1989 social security benefits would impact on his expectation, something the legislative history suggests the legislature wanted to avoid.

*Id.* at 514; *see also Heddon v. North Dakota Workmen's Compensation Bureau,* 189 N.W.2d 634, 637 (N.D.1971) (statutory amendment would not be construed to "adversely affect the rights of persons who had previously had their claims determined").

[¶ 31] Applying administrative res judicata, we explained in *Cridland v. North Dakota Workers Compensation Bureau,* 1997 ND 223, ¶ 29, 571 N.W.2d 351, there must be some finality to administrative decisions absent new evidence or a change in medical condition. We thus said statutes allowing the Bureau to review awards "must be considered in light of the doctrine of administrative res judicata, the importance of finality of agency decisions, and the purpose of the workers compensation law to provide injured workers with 'sure and certain relief' to preclude the Bureau, in the absence of new evidence or a change in medical condition, from relitigating claims" previously decided. *Id.*

[¶ 32] All of these precedents support the conclusion that a worker already receiving disability benefits has a significant reliance interest in, and expectation of, continuation of those benefits. In this case, in addition to a general expectation in continuation of his disability benefits, Gregory had a specific expectation from the language of the Bureau's original order awarding permanent total disability benefits that decided Gregory would receive them for "as long as you remain totally disabled." [12] The Bureau has not sought to adjust Gregory's benefits for a change in his medical condition or for other evidence he is no longer disabled. *See Cridland,* 1997 ND 223, ¶ 29, 571 N.W.2d 351. He had a clear reliance interest that his disability benefits would therefore continue.

[¶ 33] We conclude, in this case, there was a valid obligation to pay continued disability benefits in existence when the 1995 amendment took effect. The Bureau's attempt to wholly cancel Gregory's receipt of disability benefits past age 65 impaired that valid obligation. Thus, as directed by N.D.C.C. § 1-02-30, we construe the statute in a way that does not impair that valid obligation. We therefore hold N.D.C.C. § 65-05-09.3(2) does not apply to terminate the disability benefits of Gregory or other workers who were already receiving permanent total disability benefits before the 1995 statute took effect, and he is entitled to reinstatement of full disability benefits since August 13, 1996.

[¶ 34] We affirm the judgment of the district court reversing the Bureau's order and ordering reinstatement of disability benefits to Gregory.

[¶ 35] VANDE WALLE, C.J., and MARING, NEUMANN and SANDSTROM, JJ., concur.

---

12. In 1958, when Gregory was injured, the Revised Code of 1943, section 65-0509 read: "If the injury causes ... permanent total disability, the fund shall pay to the disabled employee during such disability, a weekly compensation...." In 1981, when Gregory became totally and permanently disabled, N.D.C.C. § 65-05-09 still directed: "If an injury causes temporary total or permanent total disability, the fund shall pay to the disabled employee during such disability a weekly compensation...."