2007 ND 142

**Richard TEDFORD, Claimant and Appellee,**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellant,**

**and**

**Red Owl Stores, Respondent.**

**No. 20060320.**

Supreme Court of North Dakota.

Aug. 27, 2007.

Mark G. Schneider, Schneider & Schneider, Fargo, N.D., for claimant and appellee.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D., for appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") appealed from an amended judg-

ment reversing WSI's decision to offset Richard Tedford's federal social security retirement benefits against his workers compensation disability benefits and from an order awarding Tedford attorney fees and costs under N.D.C.C. § 28–32–50. Tedford has moved for attorney fees and costs on appeal under the same statute. We affirm the amended judgment, concluding WSI erred in offsetting Tedford's social security retirement benefits against his workers compensation disability benefits. We reverse the order awarding Tedford attorney fees and costs, concluding the district court erred in determining WSI acted without substantial justification, and we deny Tedford's motion for attorney fees and costs on appeal.

I

[¶ 2] Tedford injured his back at work in 1985 and applied for workers compensation benefits. WSI accepted the claim and awarded medical expenses and disability benefits. Although Tedford was able to work for a period of time after the injury, he has not worked since April 1989. Tedford began receiving temporary total disability benefits in April 1989. In June 1990, WSI determined Tedford was permanently and totally disabled and began paying permanent total disability benefits. The monthly amount of the permanent benefits was the same as the prior temporary benefits, and Tedford has continuously received total disability benefits, either temporary or permanent, since April 1989.

[¶ 3] Tedford also began receiving federal social security disability benefits ("SSDI") in 1989. WSI offset the amount of his SSDI against his temporary total disability benefits as required under N.D.C.C. § 65–05–09.1. When his disability status was changed to permanent in June 1990, WSI continued to offset Tedford's SSDI against his disability payments. In

August 2003, Tedford reached his full retirement age of 65 years and 2 months, and his SSDI benefits were automatically converted to social security retirement benefits in the same monthly amount as his prior SSDI benefits.

[¶ 4] After Tedford's social security benefits converted from SSDI to retirement benefits, WSI issued an order to offset the retirement benefits against his permanent total disability benefits. Tedford requested reconsideration of WSI's order to offset his social security retirement benefits, and an administrative law judge ("ALJ") recommended reversal of WSI's order offsetting retirement benefits. WSI rejected the ALJ's recommended findings of fact, conclusions of law, and order, and issued a final order directing that Tedford's social security retirement benefits be offset against his permanent total disability benefits.

[¶ 5] Tedford appealed to the district court. The district court initially determined WSI had not erred in offsetting Tedford's federal retirement benefits against his workers compensation disability benefits, and judgment was entered affirming WSI's final order. Tedford moved to amend the judgment, and his motion was heard and considered by a different district court judge. The second judge concluded WSI was not entitled to offset Tedford's retirement benefits, and an amended judgment was entered reversing WSI's final order and directing that Tedford receive full total disability benefits, without reduction for any offset, effective August 1, 2003.

[¶ 6] Tedford subsequently moved for attorney fees and costs under N.D.C.C. § 28–32–50. The district court determined that WSI's legal arguments in the administrative and judicial proceedings were not substantially justified, and awarded Tedford attorney fees and costs.

## II

[¶ 7] On appeal under N.D.C.C. § 28–32–49, we review the decision of the administrative agency in the same manner as does the district court under N.D.C.C. § 28–32–46. *Zander v. Workforce Safety & Ins.*, 2003 ND 194, ¶ 6, 672 N.W.2d 668. There are no disputed issues of fact on the merits in this case, and only questions of law are presented. When an appeal presents only questions of law, under N.D.C.C. §§ 28–32–46 and 28–32–49 this Court must affirm the agency order unless it is not in accordance with the law. *See Wanstrom v. North Dakota Workers Comp. Bureau,* 2000 ND 17, ¶ 4, 604 N.W.2d 860. Questions of law are fully reviewable on appeal from an administrative decision. *Genter v. Workforce Safety & Ins. Fund,* 2006 ND 237, ¶ 12, 724 N.W.2d 132.

## III

[¶ 8] WSI contends it did not err in offsetting Tedford's social security retirement benefits against his workers compensation disability benefits.

[¶ 9] There is no dispute that, when Tedford was determined to be totally disabled in April 1989, WSI was authorized by statute to offset his SSDI benefits against his workers compensation disability benefits. *See* N.D.C.C. § 65–05–09.1. At that time, however, there was no authority for WSI to offset social security retirement benefits against disability benefits.

[¶ 10] The 1989 legislature enacted N.D.C.C. § 65–05–09.2, which authorized an offset of social security retirement benefits for injured employees who received permanent total disability benefits. 1989 N.D. Sess. Laws ch. 770, § 4. The statute provided that "[t]he provisions of this section are effective for workers who retire on or after July 1, 1989." N.D.C.C. § 65–05–09.2 (1989 version).

[¶ 11] This Court considered application of the retirement offset statute to an injured worker who was totally disabled and receiving benefits prior to July 1, 1989, but whose federal SSDI benefits were converted to retirement benefits after that date, in *Kallhoff v. North Dakota Workers' Comp. Bureau,* 484 N.W.2d 510 (N.D.1992). Kallhoff had been injured in 1983 and was receiving workers compensation disability benefits and SSDI. WSI was offsetting his SSDI benefits against his disability benefits. Kallhoff turned 65 in January 1990, and his SSDI benefits were automatically converted to social security retirement benefits. WSI then began offsetting Kallhoff's retirement benefits against his disability benefits, and Kallhoff challenged WSI's application of the retirement offset statute to him.

[¶ 12] This Court held that WSI could not apply N.D.C.C. § 65–05–09.2 to offset retirement benefits against Kallhoff's workers compensation disability benefits, stressing that claimants receiving total disability benefits had a reliance interest in receiving unreduced retirement benefits as they had anticipated:

> The Bureau wants us to interpret the statute to interfere with Kallhoff's expectation that his benefits would continue as he had anticipated. Kallhoff makes no claim that his benefits are vested, only that he and others similarly situated have relied on receiving unreduced retirement benefits. We agree that offsetting his post-July, 1989 social security benefits would impact on his expectation, something the legislative history suggests the legislature wanted to avoid. Without a clearer statutory expression by the legislature, we refuse to apply the statute to Kallhoff, who was "already in the fund" before July 1, 1989.

Because the legislature was concerned with protecting the reliance interest of claimants and because the legislature did not clearly express an intent to adversely affect disabled workers who qualified for benefits before July 1, 1989, and because disabled workers are not subject to the ordinary prerequisite of voluntariness in deciding when they "retire," we conclude that NDCC § 65–05–09.2 applies only to workers who qualified for workers' compensation disability benefits, and turned sixty-five, on or after July 1, 1989.

*Kallhoff*, 484 N.W.2d at 514.

[¶ 13] Subsequently, the 1993 legislature amended N.D.C.C. § 65–05–09.2.1993 N.D. Sess. Laws ch. 614, § 10. The amended statute provided for an offset of social security retirement benefits against the benefits of certain totally disabled claimants, but provided that a claimant who had been receiving benefits offset by SSDI benefits would continue to receive at least the same aggregate amount:

> This section applies to an employee who becomes entitled to and receives social security retirement benefits after June 30, 1989, or who receives social security retirement benefits that have been converted from social security disability benefits by the social security administration after June 30, 1989. A conversion by the bureau from offsetting an employee's social security disability benefits to offsetting an employee's social security retirement benefits under this section may not result in a decrease in the aggregate amount of benefits the employee receives from both sources.

N.D.C.C. § 65–05–09.2 (1993 version). The legislature also, in 1995, enacted N.D.C.C. § 65–05–09.3(2), which created a presumption that a disabled employee who became eligible for social security retirement benefits was considered to be retired and no longer eligible for workers compensation disability benefits. 1995 N.D. Sess. Laws ch. 623, § 1; *see Gregory v. North Dakota Workers Comp. Bureau*, 1998 ND 94, ¶ 19, 578 N.W.2d 101.

[¶ 14] This Court considered application of the retirement presumption statute to an employee who was totally disabled prior to its enactment in *Gregory*. Gregory had been injured in 1958, but returned to work until 1981. In 1985 WSI determined he was permanently and totally disabled and he began receiving disability benefits accordingly. In 1996, Gregory reached age 65 and became eligible for social security retirement benefits. WSI applied N.D.C.C. § 65–05–09.3(2) and discontinued Gregory's disability benefits. *Gregory*, 1998 ND 94, ¶ 3, 578 N.W.2d 101.

[¶ 15] On appeal, this Court affirmed a district court judgment reversing WSI's order discontinuing Gregory's disability benefits and ordered reinstatement of benefits. *Id.* at ¶ 34. In reaching that result, the Court relied upon N.D.C.C. § 1–02–30, which provides:

> No provision contained in this code may be so construed as to impair any vested right or valid obligation existing when it takes effect.

[¶ 16] Noting that the district court had not relied upon any claim of a "vested right" to continuing benefits, *Gregory*, 1998 ND 94, ¶ 29, 578 N.W.2d 101, this Court focused upon whether WSI had a "valid obligation" to pay full disability benefits to Gregory past age 65. In so doing, the Court relied upon *Kallhoff* and its conclusion that an employee's reliance interest in continued disability benefits past retirement age precluded retroactive application of a statute to terminate or reduce disability benefits. *Gregory*, at ¶ 30. The Court concluded Gregory had a reliance interest in, and WSI had a valid obligation

to pay, full disability benefits beyond age 65:

> All of these precedents support the conclusion that a worker already receiving disability benefits has a significant reliance interest in, and expectation of, continuation of those benefits. In this case, in addition to a general expectation in continuation of his disability benefits, Gregory had a specific expectation from the language of the Bureau's original order awarding permanent total disability benefits that decided Gregory would receive them for "as long as you remain totally disabled." The Bureau has not sought to adjust Gregory's benefits for a change in his medical condition or for other evidence he is no longer disabled. He had a clear reliance interest that his disability benefits would therefore continue.

> We conclude, in this case, there was a valid obligation to pay continued disability benefits in existence when the 1995 amendment took effect. The Bureau's attempt to wholly cancel Gregory's receipt of disability benefits past age 65 impaired that valid obligation. Thus, as directed by N.D.C.C. § 1-02-30, we construe the statute in a way that does not impair that valid obligation. We therefore hold N.D.C.C. § 65-05-09.3(2) does not apply to terminate the disability benefits of Gregory or other workers who were already receiving permanent total disability benefits before the 1995 statute took effect, and he is entitled to reinstatement of full disability benefits since August 13, 1996.

*Id.* at ¶¶ 32-33 (citation and footnote omitted).

[¶ 17] Under *Kallhoff* and *Gregory*, an injured claimant receiving total disability benefits prior to enactment of a statutory retirement offset or retirement presumption has a reliance interest in, and WSI has a valid obligation to pay, continued disability benefits, and the provisions may not be applied to such claimants. Statutory amendments may not operate retrospectively to abrogate or change WSI's obligation to pay benefits. *Ash v. Traynor*, 1998 ND 112, ¶ 13, 579 N.W.2d 180; *Gregory*, 1998 ND 94, ¶ 25, 578 N.W.2d 101.

[¶ 18] WSI contends *Kallhoff* and *Gregory* are distinguishable because they involved total discontinuation of all disability benefits, whereas N.D.C.C. § 65-05-09.2, as applied to Tedford, guarantees continuation of aggregate benefits in an amount at least equal to the amount previously received when the SSDI offset applied. WSI's argument misperceives the nature of Tedford's reliance interest and WSI's valid obligation to pay benefits.

[¶ 19] The question here is not whether Tedford can collect benefits at the same aggregate monthly amount that he was receiving prior to application of the retirement offset provision. Rather, the question is what did Tedford have a right to expect, and what did WSI have a valid obligation to pay, when Tedford was determined to be totally disabled and began receiving total disability benefits in April 1989, prior to the effective date of the 1989 and 1993 amendments to N.D.C.C. § 65-05-09.2. *See Gregory*, 1998 ND 94, ¶ 33, 578 N.W.2d 101 ("there was a valid obligation to pay continued disability benefits in existence when the 1995 amendment took effect"). When Tedford began receiving total disability benefits in April 1989 there was no retirement offset provision, and Tedford had a right to rely upon, and WSI had a valid obligation to pay, full disability benefits without an offset when Tedford reached retirement age and his SSDI benefits converted to social security retirement benefits. The 1993 amendment to N.D.C.C. § 65-05-09.2 creating a

"floor" to prevent a reduction in the actual aggregate amount received by the disabled worker does not address the problems recognized and resolved in *Kallhoff* and *Gregory*.

[¶ 20] There is a difference between applying no reduction in dollar amounts and no reduction in the benefits the claimant would have been entitled to absent retrospective application of a subsequently enacted statute. Under the facts in this case, in April 1989 Tedford was entitled to full total disability benefits. Through the application of an artificial SSDI offset provision, however, his actual monetary benefits from WSI were reduced. Absent application of that offset provision, he would have received the full amount of his total disability benefits. Thus, he had a reasonable expectation that, when he reached retirement age and his SSDI automatically converted to social security retirement benefits, the artificial offset would terminate and he would receive his full total disability benefits. Tedford's reliance interest protected by N.D.C.C. § 1–02–30 was entitlement to full total disability benefits without an offset for social security retirement benefits, not merely continuation of monthly benefits in the same amount. Similarly, WSI's "valid obligation" existing in April 1989 was to pay full benefits, without an offset, when Tedford reached retirement age and his SSDI benefits automatically converted to retirement benefits. The fact that the 1993 amendment to N.D.C.C. § 65–05–09.2 provides for Tedford to continue receiving benefits in the same amount as before does not lead to a different result in this case than in *Kallhoff* and *Gregory*.

[¶ 21] Nor is this simply a theoretical application of expectations. We recognize that a person on temporary or permanent total disability benefits does not receive the same income as if he or she were an active part of the workforce. This reduction in income will likely affect the amount of social security retirement benefits the person will receive and certainly affects the ability of the person to set aside funds for retirement to supplement social security retirement benefits as most of the workers of this country are advised to do. This expectation that the full amount of permanent total disability benefits will continue to be paid without offset as a result of the receipt of social security retirement benefits is palpable.

[¶ 22] We hold the decisions in *Kallhoff* and *Gregory* are controlling and N.D.C.C. § 65–05–09.2 does not apply to reduce Tedford's claim for full disability benefits effective from August 2003.

## IV

[¶ 23] WSI contends the district court erred in determining WSI's legal arguments were not substantially justified and awarding attorney fees and costs under N.D.C.C. § 28–32–50(1).

[¶ 24] Section 28–32–50(1), N.D.C.C., requires an award of reasonable attorney fees and costs to a prevailing claimant if an administrative agency has acted without substantial justification:

> In any civil judicial proceeding involving as adverse parties an administrative agency and a party not an administrative agency or an agent of an administrative agency, the court must award the party not an administrative agency reasonable attorney's fees and costs if the court finds in favor of that party and, in the case of a final agency order, determines that the administrative agency acted without substantial justification.

This Court recently concluded N.D.C.C. § 28–32–50 applies to WSI if it denies or reduces an employee's benefits without substantial justification. *Rojas v. Work-*

*force Safety & Ins.*, 2006 ND 221, ¶ 16, 723 N.W.2d 403.

■ [¶ 25] The appropriate standards for application of the "substantial justification" test were summarized in *Lamplighter Lounge, Inc. v. State ex rel. Heitkamp*, 523 N.W.2d 73, 75 (N.D.1994) (citations omitted);

> This statute sets forth a two-part test which must be met in order to properly award attorney fees: first, the nonadministrative party must prevail, and second, the agency must have acted without "substantial justification." Here, the nonadministrative party prevailed and, therefore, the first requirement has been fulfilled. The second requirement is shaped by our definition of substantial justification. In defining this term we have been guided by the United States Supreme Court's definition of the term "substantially justified." *Aggie Investments G.P. v. Public Serv. Comm'n*, 470 N.W.2d 805, 814 (N.D.1991) (citing *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490, 504 (1988)). There it was said that substantially justified means " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Aggie Investments G.P.*, 470 N.W.2d at 814 (quoting *Pierce*, 487 U.S. at 565, 108 S.Ct. at 2550). A position may be justified, despite being incorrect, so long as a reasonable person could think that it has a reasonable basis in law and fact. Substantial justification represents a middle ground between the automatic award of fees to the prevailing party on one side, and awarding fees only when a position is frivolous or completely without merit on the other.

Merely because an administrative agency's actions are not upheld by a court does not mean that the agency's action was not substantially justified. *Peterson v. North*

*Dakota Dep't of Transp.*, 518 N.W.2d 690, 696 (N.D.1994); *Aggie Invs., GP v. Public Serv. Comm'n*, 470 N.W.2d 805, 814 (N.D. 1991).

■ [¶ 26] We further explained the application of the statute in *Rojas*, 2006 ND 221, ¶ 17, 723 N.W.2d 403 (citations omitted):

> Section 28–32–50, N.D.C.C., will not apply in all WSI cases; rather, it is only applicable in rare cases when WSI's actions lack substantial justification.... The rationale behind this statute was to provide individuals and small businesses on the state level the same relief provided by Congress in the Equal Access to Justice Act ("EAJA"), 28 U.S.C.A. § 2412 (2006). The language of N.D.C.C. § 28–32–50 was based on the language used in the EAJA for the specific purpose of using federal interpretations of the statute as a guide in interpreting our statute. The U.S. Supreme Court has held that under § 2412(d)(1)(A), of the EAJA, the burden is on the Government to prove that its position in the underlying litigation was substantially justified, because the purpose of the legislation is to ensure individuals will not be deterred from seeking review of unjustified governmental action because of the expense involved and that strong deterrent requires that the burden of proof rest with the Government. *Scarborough v. Principi*, 541 U.S. 401, 406 and 414–15, 124 S.Ct. 1856, 158 L.Ed.2d 674 (2004). Therefore, we conclude the burden is on the agency to prove it acted with substantial justification.

The determination whether the agency acted with substantial justification is discretionary with the district court, and we apply an abuse of discretion standard on appeal. *Rojas*, at ¶ 18; *Hamich, Inc. v.*

*State,* 1997 ND 110, ¶ 44, 564 N.W.2d 640; *Lamplighter Lounge,* 523 N.W.2d at 75.

[¶ 27] The fact that WSI convinced one district judge that its legal position was correct is a strong indicator that "a reasonable person could think the position is correct, and the position has a reasonable basis in law and fact." *Rojas,* 2006 ND 221, ¶ 17, 723 N.W.2d 403. Federal courts construing the EAJA have recognized that acceptance of the government's position by another federal judge, even if the position is ultimately found to be incorrect, is persuasive evidence that the position was substantially justified. *See, e.g., Herman v. Schwent,* 177 F.3d 1063, 1065 (8th Cir.1999); *Friends of Boundary Waters Wilderness v. Thomas,* 53 F.3d 881, 885 (8th Cir.1995); *Sierra Club v. Secretary of Army,* 820 F.2d 513, 519 (1st Cir.1987). The court in *Herman* noted that "the Government's ability to convince federal judges of the reasonableness of its position, even if the judges' and Government's position is ultimately rejected in a final decision on the merits, is 'the most powerful indicator of the reasonableness of an ultimately rejected position.'" *Herman,* 177 F.3d at 1065 (quoting *Friends of Boundary Waters,* 53 F.3d at 885). However, the fact that the government prevailed at earlier stages of the litigation "does not automatically grant the government immunity from EAJA liability." *United States Secs. and Exch. Comm'n v. Zahareas,* 374 F.3d 624, 628 (8th Cir.2004). Although acceptance of the government's position at earlier stages is some evidence of substantial justification, it is not dispositive and a separate analysis of the reasonableness of the government's position is required. *See Sierra Club,* 820 F.2d at 519.

[¶ 28] Under the circumstances in this case, we conclude the district court abused its discretion in determining WSI's actions were not substantially justified. The administrative and district court proceedings presented close questions on unsettled areas of the law, particularly in light of the legislature's several attempts to amend the statute to limit or offset the social security disability and retirement benefits. WSI's arguments presented a facially reasonable, although we conclude incorrect, interpretation of the statute. In addition, we take into consideration the district court's initial agreement with and acceptance of WSI's position. Although not controlling, it is persuasive evidence that a reasonable person could believe that WSI's arguments had a reasonable basis in law and fact.

[¶ 29] We conclude the district court abused its discretion in deciding WSI's position was not substantially justified and in awarding attorney fees and costs under N.D.C.C. § 28–32–50(1).

V

[¶ 30] Tedford has moved for attorney fees and costs under N.D.C.C. § 28–32–50(1) for this appeal. We deny the motion for attorney fees and costs.

VI

[¶ 31] We have considered the remaining issues and arguments raised by the parties and find them to be either without merit or unnecessary to our decision. We affirm the amended judgment, reverse the district court's order awarding Tedford attorney fees and costs under N.D.C.C. § 28–32–50(1), and deny Tedford's motion for attorney fees and costs under N.D.C.C. § 28–32–50(1) for the appeal.

[¶ 32] WILLIAM F. HODNY, S.J., and DALE V. SANDSTROM and MARY MUEHLEN MARING, JJ., concur.

[¶ 33] The Honorable WILLIAM F. HODNY, S.J., sitting in place of CROTHERS, J., disqualified.

KAPSNER, Justice, dissenting.

[¶ 34] I respectfully dissent from Part III of the majority opinion.

[¶ 35] As the majority correctly notes, the *Kallhoff* court refused to apply N.D.C.C. § 65–05–09.2 to Kallhoff because of an ambiguity in the statute, as it was then written, and in the legislative history of the statute. *Kallhoff v. N.D. Workers' Comp. Bureau*, 484 N.W.2d 510, 514 (N.D. 1992). "Without a clearer statutory expression by the legislature, we refuse to apply the statute to Kallhoff, who was 'already in the fund' before July 1, 1989." *Id.* In so holding, the *Kallhoff* court also applied the then-normal rule of construing the workers compensation statutes liberally in favor of the worker based upon the presumed purpose of the statute.

> In resolving this dispute, we rely on our longstanding tradition of construing the Workers' Compensation Act liberally in favor of the injured worker so as to avoid forfeiture and afford relief. The purpose of the Workers' Compensation Act is remedial and should be construed liberally in favor of the injured worker. Liberal construction resolves reasonable doubt in favor of the injured worker because it was for the workers' benefit that the Act was passed.

*Id.* at 513 (citations omitted).

[¶ 36] Since *Kallhoff*, the legislature has clearly stated its intent to apply N.D.C.C. § 65–05–09.2 to persons in Tedford's circumstances. The legislature has statutorily admonished this Court against assuming a statute presumably intended to benefit injured workers should be liberally construed to benefit those injured workers. In 1995, the legislature amended N.D.C.C. § 65–01–01 to read: "This title [Workers' Compensation] may not be construed liberally on behalf of any party to the action or claim."

[¶ 37] With a clear legislative expression of intent and a directive that interpretations favoring the injured worker are not to be presumed, it remains necessary to determine if there are any impediments to application of the statute. I disagree with the majority that *Gregory v. North Dakota Workers Compensation Bureau*, 1998 ND 94, 578 N.W.2d 101 [*Gregory II*], is such an impediment. In *Gregory II*, this Court held that disability benefits could not be *terminated* under N.D.C.C. § 65–05–09.3. *Id.* at 110. However, the application of N.D.C.C. § 65–05–09.2 to Tedford does not operate to terminate his benefits. In its present form, N.D.C.C. § 65–05–09.2 acknowledges the holding of cases like *Gregory II* by providing that "[a] conversion by the organization from offsetting an employee's social security disability benefits to offsetting an employee's social security retirement benefits under this section may not result in a decrease in the aggregate amount of benefits the employee receives from both sources." As stated in *Saari v. North Dakota Workers Compensation Bureau*, 1999 ND 144, ¶ 17, 598 N.W.2d 174:

> The thread connecting *Gregory II*, *Jensen*, 1997 ND 107, 563 N.W.2d 112 and *Heddon*, 189 N.W.2d 634 (1971) is the Bureau was not permitted to retroactively apply new legislation to discontinue or reduce benefits the claimants had been receiving, or already had a vested right in receiving.

[¶ 38] After application of the social security retirement offset, Tedford will receive the same amount of money he was receiving when his disability benefits were offset by his social security disability benefits. Tedford has not shown any authority for determining that this is impermissible. I would reverse the district court and reinstate the decision of WSI to offset Tedford's social security retirement benefits against his disability benefits under N.D.C.C. § 65–05–09.2.

[¶ 39] CAROL RONNING KAPS-
NER, J.