2005 ND 83

**Glenn W. SORLIE, Claimant and Appellant**

v.

**WORKFORCE SAFETY & INSURANCE, Appellee.**

**Bobcat/Ingersoll Rand, Respondent and Appellee.**

No. 20040250.

Supreme Court of North Dakota.

April 29, 2005.

Stephen D. Little, Dietz & Little Lawyers, Bismarck, N.D., for claimant and appellant.

Lawrence E. King, Special Assistant Attorney General, Bismarck, N.D., for appellee Workforce Safety and Insurance.

Leslie Bakken Oliver (on brief), Vogel Law Firm, Bismarck, N.D., for appellee Bobcat/Ingersoll Rand.

SANDSTROM, Justice.

[¶ 1] Glenn W. Sorlie appealed from a district court judgment affirming a Workforce Safety and Insurance ("WSI") order denying him further disability benefits. We conclude Sorlie's procedural due process rights were not violated by WSI's retroactive notice of intention to discontinue benefits and WSI's decision to deny Sorlie further disability benefits is supported by a preponderance of the evidence. We affirm.

I

[¶ 2] On March 7, 2000, Sorlie injured his right shoulder, neck, and arm while employed as a welder with Bobcat/Ingersoll Rand ("Bobcat") in Bismarck. WSI accepted Sorlie's claim and paid him disability benefits from June 5, 2000, through October 17, 2000. On October 30, 2000, WSI issued an order denying further benefits on the ground that Sorlie's ongoing physical problems were the result of degenerative disc disease rather than the employment injury. Sorlie requested a formal hearing, after which WSI issued an order on July 9, 2001, concluding that Sorlie's cervical condition and degenerative disc disease were not causally related to his employment. After unsuccessfully petitioning for reconsideration, Sorlie appealed WSI's order to the district court. Meanwhile, Sorlie returned to work at Bobcat in a modified position for periods after October 2001. However, on September 5, 2002, before the district court had rendered its decision in his appeal, Sorlie was terminated from employment with Bobcat because he had been absent for three consecutive days without reporting the absences.

[¶ 3] On January 20, 2003, the district court reversed WSI's decision. The court ruled "the greater weight of the evidence [establishes] that [Sorlie's] injuries are work related," and the court remanded the case to WSI "for purposes of establishing [Sorlie's] statutory benefits." WSI did not appeal from the district court's decision, but proceeded to calculate Sorlie's benefits after he provided WSI further information. Because temporary total disability benefits had been paid through mid-October 2000 and Sorlie returned to full-time work at Bobcat on February 25, 2002, WSI awarded benefits from October 21, 2000, to February 24, 2002, except for some periods in between during which Sorlie earned 90 percent of his pre-injury wages. On April 1, 2003, WSI paid Sorlie $19,011.92 in past-due disability benefits.

[¶ 4] Also on April 1, 2003, WSI issued Sorlie a retroactive notice of intention to discontinue benefits as of February 25, 2002, because Sorlie had returned to full-time employment at Bobcat on that date. Sorlie argued his benefits should not be discontinued because he was then "unemployed and disabled from performing his regular employment duties." WSI issued an order denying further benefits on June 16, 2003, reasoning Sorlie had not shown any wage loss after February 24, 2002, because he had returned to full-time employment with Bobcat and was later terminated from employment for reasons unrelated to his injury. Sorlie demanded a formal hearing. Following the hearing, the administrative law judge ("ALJ")

found: Sorlie was able to perform his modified duties at Bobcat after February 24, 2002; he was terminated "for reasons that have nothing to do with his disability"; and he did not make "a good faith work trial or work search" after his termination. The ALJ concluded:

1. Subsection 65–05–08(6), N.D.C.C., provides that disability benefits must be paid for the period of disability provided that the employee shows that the inability to obtain employment or to earn as much as the employee earned at the time of injury is due to physical limitation related to the injury, and that any wage loss claimed is the result of the compensable injury. Mr. Sorlie argues that there is sufficient evidence of his disability. Mr. Sorlie may very well be disabled, but he must still show that his inability to obtain employment is due to his work-related injury and that any wage loss claimed is the result of his compensable injury. He has not shown that his inability to obtain employment is because of his compensable injury. The greater weight of the evidence shows that he was able to perform his duties at Bobcat before his termination for reasons unrelated to his work injury. Thereafter, Mr. Sorlie worked one two-week job as a pipe fitter, but there is no evidence that he was unsuccessful at this job because of his work injury. Nor is there any evidence, other than Mr. Sorlie's own statements, that his inability to obtain further employment is due to his work injury. In fact, Mr. Sorlie has made few attempts to find work since his termination. Mr. Sorlie has not shown by a preponderance of the evidence that his disability has made him unable to obtain employment or to earn as much as he earned at the time of his injury. Accordingly, Mr. Sorlie is not entitled to further disability benefits after February 24, 2002.

WSI adopted the ALJ's recommended findings and conclusions, and the district court affirmed WSI's order.

[¶ 5] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 28–32–42, and 65–10–01. Sorlie's appeal is timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

II

[¶ 6] On appeal, Sorlie argues he was denied procedural due process when WSI terminated his disability benefits and WSI's decision is not supported by the greater weight of the evidence.

[¶ 7] We exercise a limited review in cases governed by the Administrative Agencies Practice Act. In *Elshaug v. Workforce Safety and Ins.*, 2003 ND 177, ¶ 12, 671 N.W.2d 784, we explained:

Under N.D.C.C. §§ 28–32–46 and 28–32–49, the district court, and this Court on further appeal, must affirm an administrative agency decision unless one of the following is present:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

We exercise restraint in deciding whether an agency's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings or substitute our judgment for that of the agency. *Barnes v. Workforce Safety and Ins.*, 2003 ND 141, ¶ 9, 668 N.W.2d 290. "We decide only whether a reasoning mind reasonably could have decided the agency's findings were proven by the weight of the evidence from the entire record." *Id.* "Questions of law, including the interpretation of a statute, are fully reviewable on appeal from an administrative decision." *Id.*

A

■ [¶ 8] Sorlie argues he was denied procedural due process when WSI retroactively terminated his disability benefits, because WSI failed to provide him pretermination notice, an opportunity to respond, and a prompt post-termination evidentiary hearing.

[¶ 9] Sorlie relies upon *Flink v. North Dakota Workers Comp. Bureau*, 1998 ND 11, ¶ 14, 574 N.W.2d 784; *Frohlich v. North Dakota Workers Comp. Bureau*, 556 N.W.2d 297, 301 (N.D.1996); and *Beckler v. North Dakota Workers Comp. Bureau*, 418 N.W.2d 770, 775 (N.D.1988), which hold that under the federal and state constitutions, due process requires WSI to give a claimant prior notice of termination of disability benefits, a summary of the medical evidence supporting termination,

and an opportunity to respond. On April 1, 2003, WSI gave Sorlie a retroactive notice of intention to discontinue benefits effective February 25, 2002, only after the district court had ruled Sorlie had a compensable injury and ordered WSI to calculate his "statutory benefits." Sorlie argues WSI's initial "wrongful" termination of benefits cannot excuse its subsequent failure to provide prompt pretermination notice.

[¶ 10] The pretermination procedures articulated in *Beckler*, 418 N.W.2d at 775, and its progeny "are not applicable to a lump sum award...." *Witcher v. North Dakota Workers Comp. Bureau*, 1999 ND 225, ¶ 22, 602 N.W.2d 704. Sorlie's argument in this case is similar to an argument rejected by this Court in *Nemec v. North Dakota Workers Comp. Bureau*, 543 N.W.2d 233 (N.D.1996). In *Nemec*, the claimant, whose employer had modified her duties because of a previous injury, injured herself at work on March 12, 1992. The claimant filed a claim for benefits with the Bureau on March 17, 1992. On May 19, 1992, the Bureau issued an order awarding the claimant disability benefits for the March 12 injury and simultaneously issued a notice of intention to discontinue benefits effective March 17, 1992, because medical evidence indicated she was able to return to work on March 18, 1992. The claimant relied on *Beckler* and argued she had a due process right to pretermination notice and an opportunity to be heard before the Bureau retroactively terminated benefits effective March 17, 1992. This Court disagreed:

This Court [in *Beckler*] held the right to *continuing* disability benefits by a claimant already receiving them was a property right giving rise to due process protection. *Beckler* at 772–773. The Court stressed its holding applied only to termination of continuing benefits,

and distinguished a claimant's rights upon an initial determination of a claim. *See Beckler* at 772, 774. This Court concluded the Bureau must provide pretermination notice and a limited opportunity to respond before retroactively terminating ongoing disability benefits. *See Beckler* at 775.

> *Beckler* is clearly distinguishable from this case. Nemec was not receiving benefits on a continuing basis when she was notified her benefits were terminated. The procedure employed here, with the Bureau simultaneously notifying Nemec that she was entitled to disability benefits for a closed five-day period and that benefits would be terminated effective March 18, 1992, was effectively an award of a single lump-sum disability payment for a five-day period. The claimant has a right to rely upon continuing, regular, on-going payments which trigger[] the due process protections under *Beckler*. Those same protections do not apply to a one time lump-sum award of disability benefits for a short, closed period of time.

*Nemec*, 543 N.W.2d at 237–38 (footnote omitted).

[¶ 11] This Court in *Nemec*, 543 N.W.2d at 238, also rejected the claimant's argument that under N.D.C.C. § 65–05–08.1(6) she was entitled to pretermination notice and that benefits could not be terminated until 21 days after that notice was given:

> As the Bureau points out, Nemec's urged reading of the statute would lead to absurd results and penalize the Bureau for thoroughly investigating claims. If a claimant filed an application and was entitled to receive disability benefits for a short, closed period of time, the Bureau would be required to pay disability benefits through the period of its investigation, and, once it issued its notice of intent to terminate benefits, benefits would have to continue for 21 additional days. Under Nemec's reading of the statute, in a case such as this, where Nemec was apparently disabled for only five days, she would have been entitled to benefits under the statute for a period of nearly three months. We construe statutes to avoid absurd and ludicrous results. *Tooley v. Alm*, 515 N.W.2d 137, 142 (N.D.1994).

This Court held the procedure used by the Bureau did not violate the claimant's statutory or due process rights. *Id.*

[¶ 12] Here, WSI originally denied further benefits on October 30, 2000, because it believed Sorlie's physical problems were not work related. In its January 20, 2003, order, the district court reversed WSI's decision, ruled Sorlie's injuries were work related and compensable, and remanded to WSI for calculation of Sorlie's "statutory benefits." After doing so, WSI on April 1, 2003, paid Sorlie a lump sum of $19,011.92 for past-due disability benefits and simultaneously issued a notice of intention to discontinue disability benefits effective February 25, 2002, because Sorlie had returned to full-time employment at Bobcat and was subsequently terminated from employment for reasons unrelated to his work injury. This case differs from *Nemec* because it involves an erroneous deprivation of compensable benefits that required district court intervention to correct, and Sorlie argues WSI's original "wrongful" termination of benefits on compensability grounds should not excuse its failure to comply with pretermination notice. However, the district court's January 20, 2003, order remanding the case to WSI for calculation of Sorlie's benefits effectively restored those lost benefits to him. WSI's erroneous deprivation of benefits that were fully restored to Sorlie does not in itself entitle him to extra due

process procedures. *See Levey v. North Dakota Workers Comp. Bureau,* 425 N.W.2d 376, 378 (N.D.1988). The district court did not find that WSI acted in bad faith by originally terminating Sorlie's benefits on compensability grounds. It would have been impractical for WSI to give pretermination notice in February 2002 when Sorlie was not receiving benefits and the parties were in the process of litigating the compensability of Sorlie's claim.

[¶ 13] We conclude Sorlie's due process rights were not violated by the procedure used by WSI.

**B**

[¶ 14] Sorlie argues WSI erred in determining his entitlement to disability benefits on the basis of actual wage loss rather than loss of earning capacity "as [the district court] directed [in its] January 20, 2003" order.

[¶ 15] In its January 20, 2003, order, the district court did not "direct" that WSI determine entitlement to disability benefits on the basis of loss of earning capacity, but "remanded for purposes of establishing [Sorlie's] statutory benefits." Sorlie conceded that if WSI had originally paid him the benefits the district court ultimately ordered WSI to retroactively pay him, he would have needed to reapply for disability benefits. When a claimant reapplies for disability benefits, N.D.C.C. § 65–05–08(1) applies:

> When disability benefits are discontinued, the organization may not begin payment again unless the injured employee files a reapplication for disability benefits on a form supplied by the organization. In case of reapplication, the award may commence no more than thirty days before the date of reapplication. Disability benefits must be reinstated upon proof by the injured employee that:

> a. The employee has sustained a significant change in the compensable medical condition;

> b. The employee has sustained an actual wage loss caused by the significant change in the compensable medical condition; and

> c. The employee has not retired or voluntarily withdrawn from the job market as defined in section 65–05–09.3.

Under N.D.C.C. § 65–05–08(1), a claimant reapplying for disability benefits must show both a significant change in his medical condition and an actual wage loss caused by the significant change in his compensable medical condition. *See In re Beckler,* 2005 ND 33, ¶ 9, 692 N.W.2d 483; *Bachmeier v. North Dakota Workers Comp. Bureau,* 2003 ND 63, ¶ 11, 660 N.W.2d 217; *Gronfur v. North Dakota Workers Comp. Fund,* 2003 ND 42, ¶¶ 11–12, 658 N.W.2d 337. In *Bachmeier,* at ¶ 13, and *Gronfur,* at ¶ 12 (footnote omitted), a majority of this Court rejected the argument that a showing of loss of earning capacity satisfies the actual wage loss requirement of N.D.C.C. § 65–05–08(1), and concluded "[t]o demonstrate an actual loss of wages or remuneration as a result of a change in the claimant's compensable medical condition, the claimant must necessarily first demonstrate that he was earning wages from employment when the change in his medical condition occurred and must then show that the change caused at least a partial loss of those wages." Consequently, under the majority view in *Bachmeier* and *Gronfur,* "the claimant is required to show that he suffered a significant change in compensable medical condition *at the time he was employed and earning wages,* and that the change in his medical condition *caused* an actual loss of those wages." *Beckler,* at ¶ 10. Sorlie has provided us with no per-

suasive reasons why a different standard should be applied when erroneously deprived benefits have been fully restored to the claimant through a court order.

[¶ 16] Moreover, the parties do not dispute that Sorlie was terminated from employment with Bobcat for reasons unrelated to his employment injury. In *Wendt v. North Dakota Workers Comp. Bureau*, 467 N.W.2d 720, 728 (N.D.1991) (citations omitted), this Court said:

> Although it has been stated rather broadly in some decisions that "an employee who is discharged for just cause is not entitled to workers' compensation benefits," we agree with those courts which hold that a discharge for just cause does not automatically bar an employee from receiving disability benefits. We adopt the approach set forth by the Minnesota Supreme Court:
>
> > "[A] justifiable discharge for misconduct suspends an injured employee's right to wage loss benefits; but the suspension of entitlement to wage loss benefits will be lifted once it has become demonstrable that the employee's work-related disability is the cause of the employee's inability to find or hold new employment. Such a determination should be made upon consideration of the totality of the circumstances including the usual work search 'requirements.'"
>
> In this case, Wendt does not dispute that he was discharged by Steiger for just cause and does not claim that the discharge was in any way related to his back injury....
>
> We conclude that the Bureau could reasonably find that Wendt's loss of earning capacity was causally related to his discharge for cause rather than from his disability. Wendt may reapply for disability benefits any time in the future when he can demonstrate a causal con-

nection between his disability and a loss in earning capacity.

In *Lesmeister v. North Dakota Workers Comp. Bureau*, 2003 ND 60, ¶ 31, 659 N.W.2d 350, a majority of this Court noted that *Wendt* had been modified by the Legislature's 1991 amendment to N.D.C.C. § 65–05–08(1) to require reapplicants for disability benefits to show an actual wage loss, rather than a loss of earning capacity, caused by a significant change in the compensable medical condition. We conclude WSI applied the correct standard and did not err in determining Sorlie's entitlement to disability benefits on the basis of actual wage loss rather than loss of earning capacity.

### C

[¶ 17] Sorlie argues that WSI's decision to deny him further disability benefits is not supported by the greater weight of the evidence.

[¶ 18] Sorlie was released to return to work in a modified position at Bobcat and returned to work on February 25, 2002. He was assigned to work with a robot welder, which met the requirements of his medical work restrictions. Sorlie argued that despite his taking pain medications, his symptoms grew progressively worse while he worked at Bobcat during the spring and summer of 2002 and that he was unable to perform the tasks required of him at his modified work position. Sorlie claimed that after he was terminated from employment at Bobcat, he continuously looked for employment through the pipefitters' union and other channels, but was unable to physically perform work as a pipefitter and lacked the skills to obtain employment at jobs that were more physically appropriate for him.

[¶ 19] The ALJ, in findings and conclusions adopted by WSI, rejected Sorlie's arguments:

7. [After Mr. Sorlie returned to work,] Bobcat's ergonomics committee reviewed and addressed Mr. Sorlie's restrictions by adjusting shelving and enhancing the work site to accommodate his restrictions. At the hearing, Mr. Sorlie testified that as he began working full-time, his symptoms were getting worse. Mr. Sorlie did not complain to anyone at Bobcat about problems he was having working on the robot before late July 2002.

8. On July 23, 2002, Mr. Sorlie presented to the medical department at Bobcat, complaining that his left shoulder was sore, that he was unable to work and was going home. Mr. Sorlie told Wendy McNichols, RN, that "he has had bad days in the past and feels today is just one of his bad days." McNichols offered to make a doctor's appointment for Sorlie but he declined, stating he would feel better if he went home. Mr. Sorlie also informed Christy Roemmich, COTA/L that his right arm was causing him a lot of discomfort. He stated "that overall his workstation is not the cause of his right arm discomfort and that his surgeon told him he would have days worse than other days. Glen [sic.] feels he is just having a bad day."

9. On July 24, 2002, Mr. Sorlie returned to work, stating that he had obtained a prescription for Oxycontin and that his shoulder was feeling better. . . . The next day, Bobcat received a fax from Dr. Killen indicating that Mr. Sorlie could work while taking Oxycontin.

. . . .

12. On September 5, 2002, Mr. Sorlie's employment with Bobcat Company was terminated for being absent for three consecutive days without reporting such absences. Mr. Sorlie had been absent from work since August 19, 2002,

and had not called since August 27, 2002. Mr. Sorlie was incarcerated.

. . . .

17. On September 29–30, 2003, Mr. Sorlie completed a functional capacity evaluation. The FCE determined that Mr. Sorlie was at the sedentary level of work for full-time work. Jeanne DeKrey, MPT evaluated the 360 Robot welder position at Bobcat in view of Mr. Sorlie's FCE. She determined that Mr. Sorlie could handle the position requirements of the job and the mobility requirements, if the right elbow was at his side or supported with regard to alternating hand movements, equipment/tool handling, and arm/elbow movements.

18. At the hearing, Mr. Sorlie testified that he has worked only one pipefitting project since his termination from Bobcat. He worked for two weeks in June 2003. He states that he has looked a bit for a cashier job, but "no bites." He also states that since October 2001, he has been on the building trades union "out of work" list for pipefitting, which indicates that he is available for work. Currently, some days his pain is not a problem and other days he can't take enough medication. Dr. Arazi is his treating physician now, for pain medication.

. . . .

20. The greater weight of the evidence does not show that Mr. Sorlie was unable to perform his modified duties at Bobcat after February 24, 2002. Mr. Sorlie's doctor released him to light duty work following his surgery. Mr. Sorlie's return to work was gradual and the job was modified to comply with his restrictions. Mr. Sorlie did not complain that he was unable to do the job, and on July 23, 2002, he specifically denied that his workstation was the cause of his difficulties. He attributed the flare-up of pain

to one of his bad days. As late as July 26, Mr. Sorlie had indicated his strong desire to work and on August 2, 2002, Dr. Killen had indicated that he could work while on Hydrocodone. Further, there is no dispute that Mr. Sorlie was terminated from Bobcat for reasons that have nothing to do with his disability.

21. The greater weight of the evidence does not indicate that Mr. Sorlie has made a good faith work trial or work search. Mr. Sorlie has worked one two-week job as a pipe fitter since his termination from Bobcat in 2002. There is no evidence that he was unsuccessful in this job because of his work injury. Mr. Sorlie's work search since his termination has consisted of a few inquiries into a cashier job and placing his name on the union out-of-work list. Mr. Sorlie maintains that no one will hire him because of his disability, but there is no evidence, other than Mr. Sorlie's own statements, that Mr. Sorlie has not obtained work through this union because of his disability.

[¶ 20] We conclude a reasoning mind reasonably could have decided the ALJ's findings were proven by the weight of the evidence from the entire record. We conclude WSI did not err in denying Sorlie's claim for further disability benefits.

III

[¶ 21] The judgment is affirmed.

[¶ 22] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., and MARY MUEHLEN MARING, J., concur.

[¶ 23] The Honorable WILLIAM F. HODNY, Surrogate Judge, sitting in place of KAPSNER, J., disqualified.

[¶ 24] The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.