2008 ND 98

**Annie M. REOPELLE, Claimant and Appellee**

v.

**WORKFORCE SAFETY AND INSURANCE, Appellant**

**and**

**The City of Fargo, Respondent.**

**No. 20070240.**

Supreme Court of North Dakota.

May 15, 2008.

David A. Garaas, Garaas Law Firm, Fargo, N.D., for claimant and appellee.

Jacqueline Sue Anderson, Special Assistant Attorney General, Fargo, N.D., for appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") appealed from a district court judgment reversing WSI's decision to deny Annie Reopelle further partial disability benefits arising from a 1990 work-related injury. WSI argues Reopelle's right to further disability benefits is limited to five years under the version of N.D.C.C. § 65–05–10 enacted in 1991. We conclude Reopelle's right to partial disability benefits is not controlled by the five-year limit because she has incurred a continuous loss of earnings capacity that occurred before July 1, 1991. We affirm.

I

[¶ 2] On June 15, 1990, Reopelle suffered a cardiac arrest while employed as a patrol officer by the Fargo Police Department. Reopelle filed a claim for workers compensation benefits in June 1990, which WSI accepted, and she received temporary total disability benefits, effective June 15, 1990. In August 1990, Reopelle was released to return to work "restricted to situations where there is no chance of physical injury. Particularly, she should not return yet to active duty on the street but is cleared for other less potentially dangerous situations." She returned to work at a desk job with the Fargo Police

Department on September 4, 1990, and her temporary total disability benefits were terminated, effective September 4, 1990.

[¶ 3] In October 1991, Reopelle was referred to Mayo Clinic for "a second opinion regarding need for long term anti-arrhythmic therapy following an episode of sudden cardiac death in June of 1990" and "a second opinion regarding whether she should resume duty on the streets as a police officer." In November 1991, Reopelle underwent implantation of a defibrillator at Mayo Clinic. In February 1992, her treating physician recommended she "should not be assigned to police work involving active duty ('on the street')." In February 1992, Reopelle informed WSI that the Fargo Police Department did not have any permanent positions for officers unable to work patrol activities and she had decided to take a medical retirement from the Fargo Police Department. Reopelle's temporary total disability benefits were reinstated, effective January 24, 1992.

[¶ 4] After an October 1992 work tolerance assessment and functional capacities assessment, Reopelle's treating physician indicated Reopelle could return to work in a "clerical position or desk job if one could be identified," but she could not return to work "in the capacity of a police officer." In April 1993, Reopelle was offered a position as an "office associate I-water billing/payroll" with the City of Fargo. According to Reopelle, she refused the position due to her pregnancy and her claim about stress at that job. Based upon the offered position, WSI awarded Reopelle partial disability benefits on July 26, 1993, finding the offered position was her first appropriate rehabilitation option and her refusal was for reasons unrelated to her work injury. WSI awarded Reopelle partial disability benefits under N.D.C.C. § 65–05–10, based upon the dif-ference between her pre-injury earnings of $514 per week and her post-injury earnings capacity of $286.15 per week. On February 24, 1994, WSI also awarded Reopelle permanent partial impairment benefits under N.D.C.C. § 65–05–12, based upon WSI's determination that Reopelle had suffered a permanent partial impairment of "70% Whole Body for Cardiac."

[¶ 5] In May 1996, WSI reopened vocational rehabilitation services for Reopelle, and she underwent a functional capacities assessment that determined she was capable of "light work." Reopelle's treating physician agreed with the results of that assessment. On February 10, 1997, WSI issued an order awarding Reopelle partial disability benefits under N.D.C.C. § 65–05–10, based upon her pre-injury earnings of $514 per week and her post-injury retained earnings capacity of $298.40 per week.

[¶ 6] In December 2005, WSI issued a notice of intent to discontinue Reopelle's partial disability benefits, effective January 5, 2006, which stated WSI had paid her partial disability benefits for longer than the five-year limit provided by a 1991 amendment to N.D.C.C. § 65–05–10. Reopelle requested reconsideration, claiming the five-year limit for partial disability benefits was not applicable to her claim because that limit was enacted after her 1990 work injury. WSI issued an order denying Reopelle further partial disability benefits, and she requested an administrative hearing.

[¶ 7] After an administrative hearing, an administrative law judge ("ALJ") recommended affirming WSI's decision. The ALJ said N.D.C.C. § 65–05–10 placed a five-year limit on temporary disability benefits for loss of earning capacity occurring after June 30, 1991. The ALJ concluded that although Reopelle was initially injured

in June 1990, her right to disability benefits was not vested on the date of her injury because that right was dependent on future events that were not certain. The ALJ said Reopelle did not establish a loss of earning capacity until after the effective date of the statutory enactment of the five-year limit for claims occurring after June 30, 1991. WSI adopted the ALJ's recommendation, and Reopelle appealed to the district court.

[¶ 8] The district court reversed WSI's decision, citing three factors for deciding entitlement to partial disability benefits under *Wendt v. North Dakota Workers Comp. Bureau*, 467 N.W.2d 720, 727 (N.D. 1991) and stating that, at the time of her injury, Reopelle had a physical disability, was able to work subject to the disability, and had an actual loss of earnings capacity. The court concluded Reopelle had a right to partial disability benefits that had vested before the 1991 enactment of the five-year limit for partial disability benefits and WSI erred in applying the five-year limit retroactively to deny Reopelle continued partial disability benefits.

## II

[¶ 9] On appeal from the district court's decision, we review an administrative agency's decision in the same manner the district court reviewed the agency's decision, giving due respect to the analysis and review by the district court. *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 21, 738 N.W.2d 892. We must affirm the agency order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46. We exercise restraint in deciding whether WSI's findings of fact are supported by a preponderance of the evidence, and we do not make independent findings of fact or substitute our judgment for that of WSI. *Swenson*, at ¶ 22. Rather, we determine only whether a reasoning mind reasonably could have decided WSI's findings were proven by the weight of the evidence from the entire record. *Id.* Questions of law, however, are fully reviewable on appeal from an administrative decision. *Tedford v. Workforce Safety & Ins.*, 2007 ND 142, ¶ 7, 738 N.W.2d 29. The interpretation of a statute is a question of law. *Rojas v. Workforce Safety & Ins.*, 2006 ND 221, ¶ 13, 723 N.W.2d 403.

## III

[¶ 10] WSI argues the district court erred in its application of the five-year limit for partial disability benefits in N.D.C.C. § 65-05-10. WSI asserts application of the five-year limit does not abrogate a vested right because Reopelle's right to partial disability benefits was not

vested at the time of her injury and could change over time. Reopelle responds that her right to receive partial disability benefits is governed by the law in effect at the time of her 1990 injury, which did not include a five-year limit on the duration of partial disability benefits.

[¶ 11] Unless otherwise provided, statutes in effect on the date of injury govern a claimant's right to collect workers compensation benefits. *Sjostrand v. North Dakota Workers Comp. Bureau*, 2002 ND 125, ¶ 14, 649 N.W.2d 537; *Tangen v. North Dakota Workers Comp. Bureau*, 2000 ND 135, ¶ 12, 613 N.W.2d 490; *Saari v. North Dakota Workers Comp. Bureau*, 1999 ND 144, ¶ 10, 598 N.W.2d 174. That rule is an outgrowth of the requirement that statutory provisions are not retroactive unless "expressly declared to be so." N.D.C.C. § 1–02–10; *White v. Altru Health Sys.*, 2008 ND 48, ¶ 20, 746 N.W.2d 173 (applying N.D.C.C. § 1–02–10 and *Reiling v. Bhattacharyya*, 276 N.W.2d 237 (N.D.1979) and stating statutory directive is clear that "[i]f a statute is to be retroactive, the Legislature must expressly declare it to be so"). However, a statutory provision may not operate retroactively to abrogate a vested right or a valid obligation. N.D.C.C. § 1–02–30; *Tedford*, 2007 ND 142, ¶ 17, 738 N.W.2d 29; *Sjostrand*, at ¶ 14; *Saari*, at ¶ 10; *Gregory v. North Dakota Workers Comp. Bureau*, 1998 ND 94, ¶¶ 32–33, 578 N.W.2d 101. A vested right is an immediate or fixed right to present or future enjoyment that does not depend upon an event that is uncertain. *Sjostrand*, at ¶ 14; *Saari*, at ¶ 10; *Jensen v. North Dakota Workers Comp. Bureau*, 1997 ND 107, ¶ 11, 563 N.W.2d 112. A common thread connecting our cases about retroactive application of statutes and vested rights is that statutes may not be retroactively applied to discontinue or reduce benefits that a claimant had been receiving, or already had a vested right in receiving. *Saari*, at ¶ 17.

[¶ 12] At the time of Reopelle's 1990 work injury, there was not a five-year limit on the length of time an injured worker could receive partial disability benefits, and an injured worker's disability compensation was set at a percentage of the difference between the worker's pre-injury average weekly wages and the worker's post-injury wage earning capacity in the same or other employment. N.D.C.C. § 65–05–10 (1989).[1] In 1991, the legislature amended N.D.C.C. § 65–05–10 to enact a five-year limit for partial disability benefits "effective for partial loss of earnings capacity occurring after June 30, 1991." 1991 N.D. Sess. Laws ch. 714, § 47. The 1991 version of N.D.C.C. § 65–05–10 provided, in relevant part:

If the injury causes temporary partial disability resulting in decrease of earning capacity, the compensation is sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages before the injury and the employee's wage earning capacity after the injury in the same or another employment.

. . . .

7. Benefits must be paid during the continuance of partial disability, not to exceed a period of five years. The bureau may waive the five-year limit on the duration of partial disability benefits in cases of catastrophic injury as defined in section 65–05.1–06. This subsection is effec-

---

1. As originally introduced in 1989, proposed amendments to N.D.C.C. § 65–05–10 imposed a five-year limit on partial disability benefits; however, that limit was deleted during the legislative process. *Hearing on H.B. 1128 Before House Industry, Business and Labor*, 51st Legis. Sess. (Feb. 15, 1989); *see* 1989 N.D. Sess. Laws ch. 770, § 3.

tive for partial loss of earnings capacity occurring after June 30, 1991. Section 65–05–10, N.D.C.C., currently provides, in part:

> If the injury causes temporary partial disability resulting in decrease of earning capacity, the disability benefit is sixty-six and two-thirds percent of the difference between the injured employee's average weekly wages before the injury and the employee's wage-earning capacity after the injury in the same or another employment. Partial disability benefits are subject to a maximum of one hundred ten percent of the average weekly wage in the state. The combined partial disability benefits, dependency allowance, and postinjury wage-earning capacity may not exceed the preinjury weekly wage of the employee after deductions for social security and federal income tax.
>
> . . . .
>
> 2. Benefits must be paid during the continuance of partial disability, not to exceed a period of five years. The organization may waive the five-year limit on the duration of partial disability benefits in cases of catastrophic injury as defined in section 65–05.1–06.1 or when the injured worker is working and has long-term restrictions verified by clear and convincing objective medical and vocational evidence that limits the injured worker to working less than twenty-eight hours per week because of the compensable work injury. This subsection is effective for partial loss of earnings capacity occurring after June 30, 1991.

[¶ 13] The issue in this case is the meaning and effect of the language in N.D.C.C. § 65–05–10 that the five-year limit for partial disability benefits "is effective for partial loss of earnings capacity occurring after June 30, 1991." Our primary goal in interpreting a statute is to ascertain legislative intent. *Witcher v. North Dakota Workers Comp. Bureau*, 1999 ND 225, ¶ 11, 602 N.W.2d 704. We initially seek to ascertain legislative intent from the language of the statute itself, giving the words in the statute their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02; *Witcher*, at ¶ 11. Statutes are construed as a whole to harmonize them and give meaning to each word and phrase, if possible. N.D.C.C. § 1–02–07; *Witcher*, at ¶ 11. If a statute is ambiguous, extrinsic aids may be used to construe the statute to determine legislative intent, including the object sought to be obtained, the legislative history, and the administrative construction of the statute. N.D.C.C. § 1–02–39; *Olson v. Workforce Safety & Ins.*, 2008 ND 59, ¶ 14, 747 N.W.2d 71. A statute that is susceptible to different but rational meanings is ambiguous. *Ash v. Traynor*, 2000 ND 75, ¶ 6, 609 N.W.2d 96.

[¶ 14] The plain language of N.D.C.C. § 65–05–10 authorizes partial disability for decreased earning capacity, calculated as the difference between the injured worker's pre-injury average weekly wage and the worker's post-injury wage earning capacity and provides that the five-year limit for partial disability benefits is "effective for partial loss of earnings capacity occurring after June 30, 1991." Although N.D.C.C. § 65–01–02(14) defines "disability" to mean "loss of earnings capacity and may be permanent total, temporary total, or partial," the relevant language of N.D.C.C. § 65–05–10 explicitly refers to "loss of earnings capacity" and earnings capacity itself is not defined by our statutes. We have recognized, however, that earnings capacity is different from actual earnings or wages and is a more theoretical concept that is based on a

claimant's capacity or ability to earn wages. *Gronfur v. North Dakota Workers Comp. Fund,* 2003 ND 42, ¶ 13, 658 N.W.2d 337; *see also* Arthur Larson, *Larson's Workers' Compensation Law* § 81.01[1] (2007). The plain language of N.D.C.C. § 65–05–10 also requires the loss of earnings capacity to occur after June 30, 1991. When those statutory requirements are construed together, we conclude the plain language of N.D.C.C. § 65–05–10 requires application of the five-year limit on disability benefits when an injured worker's partial loss of capacity to earn wages happens after June 30, 1991.

[¶ 15] Although WSI may review disability claims at any time, the plain language of N.D.C.C. § 65–05–10 does not textually refer to determinations regarding entitlement to disability benefits. *See Sjostrand,* 2002 ND 125, ¶ 15, 649 N.W.2d 537 (stating WSI may review disability determinations at any time under N.D.C.C. § 65–05–04 to decide whether a recipient remains disabled and entitled to benefits and holding determination of continuing disability should be based on the law in effect when the determination is made and not in effect at the time of the injury). Neither does the plain language of N.D.C.C. § 65–05–10 textually refer to disability determinations "irrespective of the date of injury." *See* N.D.C.C. § 65–05–08(5) ("provisions of this section apply to any disability claim asserted against the fund on or after July 1, 1991, irrespective of injury date"). Moreover, the language of N.D.C.C. § 65–05–10 also does not textually refer to when WSI issues a decision establishing a recipient's earning capacity. Rather, the five-year limit of N.D.C.C. § 65–05–10 is explicitly "effective for partial loss of earnings capacity occurring after June 30, 1991." We construe the plain language of the five-year limit for partial disability benefits to apply when the partial loss of earnings capacity occurs after June 30, 1991. If a claimant has a continuous partial loss of earning capacity that occurs before July 1, 1991, the five-year limit on partial disability benefits is not applicable. That interpretation is consistent with the common thread in our jurisprudence about vested rights that a statute may not be retroactively applied to discontinue or reduce benefits that a claimant has been continuously receiving, or already has a vested right in receiving. *Saari,* 1999 ND 144, ¶ 17, 598 N.W.2d 174.

[¶ 16] Here, the evidence indicates that Reopelle sustained a loss of earnings capacity in June 1990. Reopelle returned to work at a modified position with work restrictions in September 1990, and her condition and earnings capacity could have changed after her work injury without abrogating a vested right. *See Sjostrand,* 2002 ND 125, ¶ 15, 649 N.W.2d 537 (discussing WSI's continuing jurisdiction to review claimant's condition). There is no evidence in this record, however, that after Reopelle's June 1990 work injury, she ever regained the capacity to earn what she was earning as a police officer at the time of her June 1990 work injury. WSI issued orders in July 1993, and in February 1996, which reflected her post-injury earnings capacity was less than her pre-injury wages, and WSI's decisions belie any conclusion that, after her work injury, Reopelle ever regained her capacity to earn what she had been earning as a police officer at the time of her work injury.

[¶ 17] We conclude Reopelle did not have a loss of earnings capacity occurring after June 30, 1991, within the meaning of N.D.C.C. § 65–05–10. We therefore conclude the five-year limit of N.D.C.C. § 65–05–10 does not apply to Reopelle's continuing entitlement to partial disability bene-

fits, and we hold the district court did not err in reversing WSI's order.

## IV

[¶ 18] Because of our resolution of this issue, we need not address Reopelle's separate argument that N.D.C.C. § 65–05–08 requires WSI to pay disability benefits for the entire duration of her injury, or her argument about attorney fees.

## V

[¶ 19] We affirm the district court judgment.

[¶ 20] ROBERT O. WEFALD, D.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶ 21] The Honorable ROBERT O. WEFALD, D.J., sitting in place of CROTHERS, J., disqualified.