2009 ND 90

**Sharon ESLINGER, Claimant
and Appellant**

v.

**NORTH DAKOTA WORKFORCE
SAFETY & INSURANCE,**
Appellee

and

**American Legion Post, Respondent.**

No. 20080232.

Supreme Court of North Dakota.

May 27, 2009.

Steven L. Latham, Larson Latham Bliss Huettl, LLP, Bismarck, N.D., for claimant and appellant.

Shanon Marie Gregor, Special Assistant Attorney General, Fargo, N.D., for appellee.

VANDE WALLE, Chief Justice.

[¶ 1] Sharon Eslinger appealed from a district court judgment affirming the final order of Workforce Safety and Insurance ("WSI") awarding Eslinger permanent total disability benefits only until she becomes eligible for social security retirement benefits. We affirm, concluding WSI did not err in determining the retirement

presumption statute, N.D.C.C. § 65–05–09.3(2), applied to Eslinger's claim.

I

[¶ 2]  Eslinger injured her knee in February 1995 while working at the Garrison American Legion Club. Her claim for workers compensation benefits was accepted and she began receiving benefits. She briefly returned to work but, on May 1, 1995, had surgery on her injured knee. WSI awarded Eslinger temporary total disability benefits beginning on May 1, 1995.

[¶ 3]  On July 28, 1995, Eslinger's doctor released her to return to work. WSI issued a notice of intention to discontinue benefits ("NOID") to Eslinger on August 4, 1995, advising her that her disability benefits would terminate on August 24, 1995. Because Eslinger's position at the American Legion Club had been eliminated, Eslinger actively sought other employment. When her search proved unsuccessful, she applied for and received unemployment compensation benefits from October 1995 until April 1996.

[¶ 4]  On November 20, 1995, WSI entered an order formally denying further disability benefits, and Eslinger sought a rehearing. Following an administrative hearing, the administrative law judge ("ALJ") found Eslinger was not disabled at the time WSI issued its order and was not entitled to further disability benefits. The ALJ suggested, however, that Eslinger's medical condition may have changed and it might be appropriate for her to file a reapplication for benefits. On September 6, 1996, WSI adopted the ALJ's recommended order as its final order denying further disability benefits.

[¶ 5]  Eslinger did not appeal to the district court from WSI's order denying further benefits but filed a reapplication for disability benefits. WSI initially denied her reapplication for benefits. After an administrative hearing, however, WSI adopted the ALJ's recommendation to reverse its initial order and ultimately awarded Eslinger temporary total disability benefits retroactive to May 4, 1996. Over the course of the next several years, WSI unsuccessfully attempted to develop a vocational rehabilitation plan to allow Eslinger to return to work.

[¶ 6]  Finally, in 2007, WSI issued a notice to Eslinger advising her that her status had been changed to permanent total disability, and that she would continue receiving disability benefits until she reached full retirement age as determined by social security. Eslinger disputed whether her benefits should be terminated at retirement age. Following an administrative hearing, the ALJ concluded that the retirement presumption in N.D.C.C. § 65–05–09.3(2) applied to Eslinger's claim and recommended that WSI's order be affirmed. Under the terms of the ALJ's recommended order, Eslinger's disability benefits would terminate when she became eligible for full social security retirement benefits on September 18, 2009. With one minor alteration, WSI adopted the ALJ's recommendations as its final order. Eslinger appealed to the district court, which affirmed WSI's final order.

II

[¶ 7]  Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, courts exercise a limited review in appeals from administrative agency decisions. *Bergum v. North Dakota Workforce Safety & Ins.*, 2009 ND 52, ¶ 8, 764 N.W.2d 178; *Bruder v. North Dakota Workforce Safety & Ins. Fund*, 2009 ND 23, ¶ 6, 761 N.W.2d 588; *Drayton v. Workforce Safety & Ins.*, 2008 ND 178, ¶ 9, 756 N.W.2d 320. Under N.D.C.C. § 28–32–46, the district court

must affirm the order of the administrative agency unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

On appeal from the district court's decision in an administrative appeal, we review the agency order in the same manner. N.D.C.C. § 28–32–49; *Bergum,* at ¶ 8; *Bruder,* at ¶ 6.

[¶ 8] We exercise restraint in reviewing an agency's findings of fact, and we do not make independent findings of fact or substitute our judgment for that of the agency. *Bergum,* 2009 ND 52, ¶ 9, 764 N.W.2d 178; *Bruder,* 2009 ND 23, ¶ 7, 761 N.W.2d 588. Questions of law, however, are fully reviewable on appeal from an administrative decision. *Drayton,* 2008 ND 178, ¶ 10, 756 N.W.2d 320; *Tedford v. Workforce Safety & Ins.,* 2007 ND 142, ¶ 7, 738 N.W.2d 29. The interpretation of a statute is a question of law. *Drayton,* at ¶ 10; *Reopelle v. Workforce Safety & Ins.,* 2008 ND 98, ¶ 9, 748 N.W.2d 722.

## III

[¶ 9] The sole issue presented on appeal is whether N.D.C.C. § 65–05–09.3(2), which creates a presumption that a disabled employee who becomes eligible to receive social security retirement benefits is considered to be retired and no longer eligible for workers compensation disability benefits, applies to Eslinger's claim.

[¶ 10] The retirement presumption at issue in this case was created and enacted by the 1995 Legislature. *See* 1995 N.D. Sess. Laws ch. 623, § 1. The relevant statute provides:

An injured employee who begins receiving social security retirement benefits or other retirement benefits in lieu of social security retirement benefits, or who attains retirement age for social security retirement benefits unless the employee proves the employee is not eligible to receive social security retirement benefits or other benefits in lieu of social security retirement benefits is considered retired. The organization may not pay any disability benefits, rehabilitation benefits, or supplementary benefits to an employee who is considered retired; however, the employee remains eligible for medical benefits, permanent partial impairment benefits, and the additional benefit payable under section 65–05–09.4.

N.D.C.C. § 65–05–09.3(2). The retirement presumption is expressly made applicable to any person who becomes eligible to receive social security retirement benefits after July 31, 1995:

This section applies to all persons who begin receiving social security retirement benefits or other retirement benefits in lieu of social security retirement

benefits, or who attain retirement age for social security retirement benefits unless the employee proves the employee is not eligible to receive social security retirement benefits or other benefits in lieu of social security retirement benefits, after July 31, 1995.

N.D.C.C. § 65–05–09.3(4).

[¶ 11] WSI relied upon this retirement presumption in concluding that Eslinger's right to receive permanent total disability benefits would terminate when she became eligible for social security retirement benefits. Eslinger argues that, under the holdings in *Gregory v. North Dakota Workers Comp. Bureau*, 1998 ND 94, 578 N.W.2d 101, and *Ash v. Traynor*, 1998 ND 112, 579 N.W.2d 180, she had an expectation in, and WSI had a valid obligation to pay, continued disability benefits. She therefore contends WSI may not apply the retirement presumption of N.D.C.C. § 65–05–09.3(2) to her claim.

[¶ 12] In *Gregory*, we considered for the first time the retroactive application of the retirement presumption in N.D.C.C. § 65–05–09.3(2) to a claimant who was already receiving ongoing total disability benefits prior to its enactment. Gregory began receiving permanent total disability benefits in 1985. In 1996, Gregory became eligible for social security retirement benefits and WSI, relying upon N.D.C.C. § 65–05–09.3(2), discontinued his disability benefits. In determining whether N.D.C.C. § 65–05–09.3(2) applied to Gregory's claim, the Court considered the rule of statutory construction contained in N.D.C.C. § 1–02–30:

No provision contained in this code may be so construed as to impair any vested right or valid obligation existing when it takes effect.

*See Gregory*, 1998 ND 94, ¶ 29, 578 N.W.2d 101.

[¶ 13] Noting that the district court had not relied upon any claim of a vested right to continuing benefits, this Court focused its discussion of N.D.C.C. § 1–02–30 upon whether WSI had a valid obligation to pay full disability benefits to Gregory after he became eligible for social security retirement benefits. *Gregory*, 1998 ND 94, ¶ 29, 578 N.W.2d 101; *see also Tedford*, 2007 ND 142, ¶ 16, 738 N.W.2d 29. To support its conclusion that an injured worker already receiving disability benefits has a significant reliance interest in, and expectation of, continuation of those benefits, *see Gregory*, at ¶ 32, the Court relied upon the fact that an injured worker's right to continuing disability payments is a significant property right subject to due process protection and that administrative res judicata requires finality in administrative decisions unless there is a change in medical condition:

In determining whether a valid obligation existed when the 1995 amendment to N.D.C.C. § 65–05–09.3(2) took effect, we look to our prior precedents where we have concluded a worker currently receiving benefits had a significant property right in continuation of those benefits, and an expectation those benefits would continue. We have held the right to receive continuing workers compensation disability benefits by a worker already receiving them is a property right subject to due process protection, and that the claimant has "a right to rely upon continuing, regular, ongoing payments." *Nemec v. North Dakota Workers Compensation Bureau*, 543 N.W.2d 233, 237–238 (N.D.1996); *see also Beckler v. North Dakota Workers Compensation Bureau*, 418 N.W.2d 770, 772–773 (N.D.1988). In *Kallhoff v. North Dakota Workers' Compensation Bureau*, 484 N.W.2d [510,] 512–514 [ (N.D.1992) ], we repeatedly stressed the reliance interest of a worker to con-

tinued disability benefits when we held that the 1989 retirement offset directive did not apply to one who was receiving disability benefits before 1989 but who turned 65 after the effective date of the statute. We reasoned:

> The Bureau wants us to interpret the statute to interfere with Kallhoff's expectation that his benefits would continue as he had anticipated. Kallhoff makes no claim that his benefits are vested, only that he and others similarly situated have relied on receiving unreduced retirement benefits. We agree that offsetting his post-July, 1989 social security benefits would impact on his expectation, something the legislative history suggests the legislature wanted to avoid.

*Id.* at 514; *see also Heddon v. North Dakota Workmen's Compensation Bureau,* 189 N.W.2d 634, 637 (N.D.1971) (statutory amendment would not be construed to "adversely affect the rights of persons who had previously had their claims determined").

Applying administrative res judicata, we explained in *Cridland v. North Dakota Workers Compensation Bureau,* 1997 ND 223, ¶ 29, 571 N.W.2d 351, there must be some finality to administrative decisions absent new evidence or a change in medical condition. We thus said statutes allowing the Bureau to review awards "must be considered in light of the doctrine of administrative res judicata, the importance of finality of agency decisions, and the purpose of the workers compensation law to provide injured workers with 'sure and certain relief' to preclude the Bureau, in the absence of new evidence or a change in medical condition, from relitigating claims" previously decided. *Id.*

*Gregory,* at ¶¶ 30–31.

[¶ 14] Based upon this reasoning, the Court concluded that WSI had a valid obligation to pay continued disability benefits and N.D.C.C. § 65–05–09.3(2) did not apply to Gregory's claim:

> All of these precedents support the conclusion that a worker already receiving disability benefits has a significant reliance interest in, and expectation of, continuation of those benefits. In this case, in addition to a general expectation in continuation of his disability benefits, Gregory had a specific expectation from the language of the Bureau's original order awarding permanent total disability benefits that decided Gregory would receive them for "as long as you remain totally disabled." The Bureau has not sought to adjust Gregory's benefits for a change in his medical condition or for other evidence he is no longer disabled. He had a clear reliance interest that his disability benefits would therefore continue.
>
> We conclude, in this case, there was a valid obligation to pay continued disability benefits in existence when the 1995 amendment took effect. The Bureau's attempt to wholly cancel Gregory's receipt of disability benefits past age 65 impaired that valid obligation. Thus, as directed by N.D.C.C. § 1–02–30, we construe the statute in a way that does not impair that valid obligation. We therefore hold N.D.C.C. § 65–05–09.3(2) does not apply to terminate the disability benefits of Gregory or other workers who were already receiving permanent total disability benefits before the 1995 statute took effect, and he is entitled to reinstatement of full disability benefits since August 13, 1996.

*Gregory,* 1998 ND 94, ¶¶ 32–33, 578 N.W.2d 101(citation and footnote omitted); *see also Tedford,* 2007 ND 142, ¶ 16, 738 N.W.2d 29.

[¶ 15] In *Ash*, this Court considered the effect of the 1997 amendments to the retirement presumption, which created an "additional benefit" for injured workers whose disability benefits were canceled by a "presumed" retirement under N.D.C.C. § 65–05–09.3(2). *Ash*, 1998 ND 112, ¶¶ 11–12, 579 N.W.2d 180; *see* N.D.C.C. § 65–05–09.4. This Court reinforced its holding in *Gregory*, concluding that N.D.C.C. § 65–05–09.3(2), as amended, did not apply to terminate the disability benefits of injured workers "already receiving total disability benefits before the 1995 statute took effect." *Ash*, at ¶ 14. This Court based its holding upon the underlying rationales in *Gregory*:

> In *Gregory*, we concluded a worker who is already receiving disability benefits has a significant reliance interest in, and expectation of, continuation of those benefits. *Gregory*, 1998 ND 94, ¶ 32, 578 N.W.2d 101. We reached this conclusion after reviewing prior precedents showing "a worker currently receiving benefits had a significant property right in continuation of those benefits, and an expectation those benefits would continue.... [T]he right to receive continuing workers compensation disability benefits by a worker already receiving them is a property right subject to due process protection, and that the claimant has 'a right to rely upon continuing, regular, ongoing payments.'" *Id.* at ¶ 30 (quoting *Nemec v. North Dakota Workers Comp. Bureau*, 543 N.W.2d 233, 237–38 (N.D.1996)) (other citations omitted). Also considered in *Gregory*, was the doctrine of administrative res judicata, involving the importance of the finality of agency decisions, and the purpose of the workers compensation law to provide injured workers with "sure and certain relief" and to preclude the Bureau from relitigating claims, absent new evidence or a change in medical condition of the claimant. *Gregory*, 1998 ND 94, ¶ 31, 578 N.W.2d 101. The 1997 amendments to N.D.C.C. §·65–05–09.3(2) cannot retrospectively ·change the Bureau's obligation. *Id.* at ¶ 25 (stating "[s]tatutory amendments may not operate retrospectively to abrogate a vested right or valid obligation").

*Ash*, at ¶ 13.

[¶ 16] This case presents a significantly different factual scenario than *Gregory* or *Ash*. In those cases, the injured claimants had been found to be totally disabled and had been continuously receiving total disability benefits from before the effective date of the statute up to the time WSI sought to terminate benefits. *See also Reopelle*, 2008 ND 98, ¶¶ 1, 16–17, 748 N.W.2d 722 (claimant's right to partial disability benefits was not controlled by the five-year limitation enacted in 1991 because she incurred a continuous loss of earnings capacity that occurred before July 1, 1991, the effective date of the statute). In this case, although Eslinger was injured and first received total disability benefits before the statute's effective date, there was a subsequent period when she was no longer totally disabled and her disability benefits were terminated. Her medical condition then changed again, she reapplied for benefits, and she ultimately began receiving total disability benefits again. It is this gap in her eligibility for and receipt of benefits that distinguishes her case from *Gregory* and *Ash*.

[¶ 17] The time line of Eslinger's injury and claim is significant. Eslinger was injured in February 1995 and began receiving temporary total disability benefits on May 1, 1995. On July 28, 1995, Eslinger's doctor released her to return to work. On August 1, 1995, the retirement presumption statute went into effect. *See* 1995 N.D. Sess. Laws ch. 623, § 1. On August 4, 1995, WSI issued the NOID to

Eslinger and her disability benefits were terminated on August 24, 1995. *See* N.D.C.C. § 65–05–08.1(5) (discontinuation of ongoing disability benefits takes effect twenty-one days after the NOID is mailed). Eslinger did not appeal from WSI's final order finding that she had been released to return to work, was no longer disabled, and was not entitled to further disability benefits. Eslinger later reapplied for benefits and again began receiving total disability benefits effective May 4, 1996.

■ [¶ 18] Eslinger did not receive disability benefits for the eight-month period between August 24, 1995, and May 4, 1996. Although she now suggests she remained disabled and unable to work during that period, Eslinger did not appeal from WSI's final order finding that she had been released to return to work, was no longer disabled, and was not eligible for further disability benefits. Furthermore, Eslinger applied for and received unemployment compensation benefits from October 1995 until April 1996. An individual is eligible for unemployment compensation benefits only if she is able to work, available for work, and actively seeking work. N.D.C.C. § 52–06–01(3). WSI's finding that Eslinger was not, as of July 28, 1995, disabled or eligible for disability benefits is res judicata. *See* N.D.C.C. § 65–05–03; *Rieniets v. North Dakota Workers' Comp. Bureau*, 512 N.W.2d 708, 710–11 (N.D. 1994) ("absent a reopening, an unappealed decision on an employee's present medical condition is final and res judicata of his medical condition at that time") (quoting *Lass v. North Dakota Workmen's Comp. Bureau*, 415 N.W.2d 796, 800 (N.D.1987)).

[¶ 19] This eight-month gap in Eslinger's eligibility for total disability benefits is significant in light of the policy bases underlying this Court's decisions in *Gregory* and *Ash*. Those cases relied upon two primary pillars of support: the existence of a recognizable property right in continued, ongoing benefits and the res judicata effect of a prior determination that the claimant was entitled to benefits. In both *Gregory* and *Ash*, we equated an injured worker's reliance interest in continued disability benefits to the due process right to rely upon "continuing, regular, ongoing payments" by "a worker already receiving them." *Ash*, 1998 ND 112, ¶ 13, 579 N.W.2d 180; *Gregory*, 1998 ND 94, ¶ 30, 578 N.W.2d 101. Thus, "a worker currently receiving benefits had a significant property right in continuation of those benefits, and an expectation those benefits would continue." *Ash*, at ¶ 13; *Gregory*, at ¶ 30. This Court cited *Nemec v. North Dakota Workers Comp. Bureau*, 543 N.W.2d 233 (N.D.1996), and *Beckler v. North Dakota Workers Comp. Bureau*, 418 N.W.2d 770 (N.D.1988), to support its holdings. It is well-settled that the due process protections recognized in *Nemec* and *Beckler* apply only to the termination of currently ongoing disability benefits, and a claimant only has a right to rely upon "continuing, regular, on-going payments." *Ziesch v. Workforce Safety & Ins.*, 2006 ND 99, ¶ 10, 713 N.W.2d 525 (quoting *Sorlie v. Workforce Safety & Ins.*, 2005 ND 83, ¶ 10, 695 N.W.2d 453).

[¶ 20] Similarly, this Court's reliance in *Gregory* and *Ash* upon a claimant's right to rely upon the res judicata effect of a prior determination of eligibility for total disability benefits expressly exempted situations where there was a change in the claimant's medical condition. *See Ash*, 1998 ND 112, ¶ 13, 579 N.W.2d 180; *Gregory*, 1998 ND 94, ¶ 31, 578 N.W.2d 101. Where, as in this case, a claimant receiving total disability benefits experiences an improvement in her medical condition, is released to return to work, and is found to be no longer disabled, resulting in termi-

nation of her disability benefits, the claimant no longer has a reasonable expectation of, or right to rely upon, continued disability benefits.

[¶ 21] Although Eslinger may have had a valid right to rely upon continuing disability benefits when she first began receiving them in May 1995, her right to rely upon continued benefits dissipated when her medical condition improved and she was found to be no longer disabled. Our holdings in *Gregory* and *Ash* do not apply when a claimant's medical condition changes and she is no longer eligible for "continuing, regular, ongoing" disability benefits. When Eslinger's total disability benefits were terminated in August 1995, because she was released to return to work on July 28, 1995, she lost her reliance interest in continued benefits and the provisions of the existing retirement presumption statute became applicable to her claim. Her subsequent reapplication and receipt of benefits did not resurrect her right to rely on continuing benefits computed under the law in effect at the time she first received disability benefits in May 1995.

[¶ 22] We hold that WSI did not err in holding that the retirement presumption provisions of N.D.C.C. § 65–05–09.3(2) applied to Eslinger's claim.

IV

[¶ 23] We have considered the remaining issues and arguments raised by the parties and determine they are either unnecessary to our decision or are without merit. The district court judgment affirming WSI's final order is affirmed.

[¶ 24] CAROL RONNING KAPSNER, J., WILLIAM W. McLEES, D.J., and WADE L. WEBB, D.J., concur.

[¶ 25] The Honorable WILLIAM W. McLEES, D.J., and the Honorable WADE L. WEBB, D.J., sitting in place of CROTHERS, J., and SANDSTROM, J., disqualified.

MARING, Justice, dissenting.

[¶ 26] I respectfully dissent. I am of the opinion that *Gregory* and *Ash* are applicable. *Gregory v. N.D. Workers Comp. Bureau*, 1998 ND 94, 578 N.W.2d 101; *Ash v. Traynor*, 1998 ND 112, 579 N.W.2d 180. Therein we held when the claimant has a vested interest in the right to receive disability benefits on the effective date of the retirement presumption statute that WSI could not apply that statute to discontinue the benefits the claimant had been receiving. *Id.* The majority concludes that Eslinger did not have a vested right to disability benefits on August 1, 1995, because her doctor said she could return to work on July 28, 1995.

[¶ 27] However, as of August 1, 1995, Eslinger was still receiving disability benefits and her right to receive continuing disability benefits was vested until August 24, 1995. On August 1, 1995, Eslinger had a vested right to receive disability benefits and a continuing expectation that her benefits would continue. Under section 65–05–08.1(5), N.D.C.C., WSI must send a notice of intention to discontinue benefits to the employee upon receipt of a report that the employee has been or will be released to return to work. The notice must include an explanation of the reason for discontinuing benefits, an explanation of the employee's right to respond, and the procedure for challenging "the proposed action." *Id.* The majority overlooks the requirement in N.D.C.C. § 65–05–08.1 that disability benefits must be paid to the employee for "twenty-one days after the date the notice of intention to discontinue benefits is mailed . . . ." The notice of intention to discontinue benefits was issued to Eslinger on August 4, 1995. Eslinger had a

vested right to receipt of these benefits on August 1, 1995. In fact, our Court has said that an employee is entitled to benefits retroactively and prospectively until WSI has provided proper notice under N.D.C.C. § 65–05–08.1(5). *See Beckler v. N.D. Workers Comp. Bureau,* 418 N.W.2d 770, 774 (N.D.1988); *Flink v. N.D. Workers Comp. Bureau,* 1998 ND 11, ¶ 19, 574 N.W.2d 784; *Vernon v. N.D. Workers Comp. Bureau,* 1999 ND 153, ¶¶ 18–22, 598 N.W.2d 139.

[¶ 28]   For these reasons I respectfully dissent and conclude that the retirement presumption statute does not apply to Eslinger's claim. I would reverse the final order of WSI and the district court judgment and would remand for reinstatement of Eslinger's benefits.

[¶ 29]   Mary Muehlen Maring